STATE *ex rel.* RED JACKET COAL CORPORATION

*v.*

GEORGE W. STOKES, STATE COMPENSATION COMMISSIONER

(No. 10784)

Submitted September 5, 1956.   Decided October 23, 1956.

*Slaven & Staker, Lant R. Slaven, Frederick P. Kopp,* for relator.

*John G. Fox,* Attorney General, *Franklin W. Kern,* Secretary, Workmen's Compensation Fund, *George G. Burnette, Jr.,* Assistant Attorney General, for respondent.

BROWNING, PRESIDENT:

In this original proceeding in mandamus, the relator, Red Jacket Coal Corporation, seeks to compel the respondent, State Compensation Commissioner, hereinafter referred to as Commissioner, to delete certain charges, allegedly unlawfully transferred by the Commissioner from the account of another subscriber to the Workmen's Compensation Fund to relator's account, and to not consider such charges in computing relator's merit rating for the fiscal year 1955-1956.

The issue arose in the following manner: On May 18, 1953, relator purchased all standing timber on a tract of land from W. M. Ritter Lumber Company, and obligated itself to cut the merchantable saw timber on the tract and deliver it to Ritter. On the same day it entered into an agreement with Tazewell Lumber & Coal Corp., a corporation, organized and existing under the laws of the State of Virginia, which, beginning about May 18, 1953, was engaged solely in the business of logging and operating a sawmill in West Virginia, by which Tazewell agreed to log the tract, deliver mine timber to relator, and to deliver the saw timber to Ritter. Among other provisions, the agreement between relator and Tazewell provided:

> "Second: The said Contractor (Tazewell) shall do all work in a first-class workman-like manner * * * in such a way as to produce the highest percentage of the best grades of lumber, mine timbers, headers and ties possible to be produced from said logs, and to this end, all work of felling the trees and cutting of same into logs, and the manufacture thereof shall be done under the supervision and direction of the representative of Red Jacket. However, this provision shall not change the status of the party of the second part as an independent contractor, and shall not relieve it of any liability or responsibility to perform the work it has obligated itself herein to do and perform.

> "* * *.

> "Seventh: The said contractor agrees and covenants that it is an independent contractor.

"Eighth: The said contractor agrees and binds itself to comply fully and at all times with all provisions of:

"(1) All Workmen's Compensation Laws * * *.

"* * *.

"Thirteenth: Red Jacket shall have no right to supervise, control or direct any part of the work or labor of the Contractor or any of Contractor's employees, performed in producing and delivering said timbers, headers, ties, lumber, wedges and logs. Nor shall Red Jacket have any right to interfere with Contractor's hiring, discharge, payment or supervision of the work of any person employed by the Contractor."

On July 28, 1953, Tazewell applied to the Commissioner to become a subscriber to the Workmen's Compensation Fund, but was denied because of not being qualified to do business in this State. It thereafter qualified, a second application, on September 3, 1953, was approved and it became a subscriber to the Fund as of September 4, 1953.

The charges complained of in the instant proceeding arose out of injuries sustained by employees after Tazewell became a subscriber to the Fund, were processed against Tazewell, and charged to Tazewell's account until transferred by the Commissioner to relator's account in the spring of 1955. This transfer was made upon the basis of the claim of one Justus, an alleged employee of Tazewell, who was injured on September 2, 1953. On September 1, 1954, he instituted an action in the Circuit Court of Wyoming County against Tazewell, relator and Ritter, which action was subsequently dismissed as to Ritter.

After the presentation of the evidence, but prior to the court's decision, counsel for both sides sought determination of the claim by the Commissioner, the trial court, by letter to the Commissioner, having indicated that it believed Justus to be an employee of relator within the

meaning of the Workmen's Compensation Act, and that the Commissioner should assume jurisdiction. After relator complied with the Commissioner's request that relator include the wages of all employees of Tazewell, from the date of the agreement to September 4, 1953, the Commissioner entertained the claim of Justus, made disbursements from the fund in his behalf, and charged such to relator's account.

The relator avers that it accepted the charge in the Justus claim for two reasons: (1) The conduct of one Keiling, a forester employed by relator, who, without specific authority, attempted to exercise supervision and control over the employees of Tazewell inconsistent with Tazewell's status as an independent contractor, and that as a result of such conduct by Keiling, as developed in the testimony in the law action in the Circuit Court of Wyoming County, he was discharged on April 30, 1954, and thereafter there was no supervision or control in behalf of relator, inconsistent with Tazewell's status as an independent contractor; and (2) that Tazewell was not a subscriber in good standing to the Workmen's Compensation Fund at the time of the injury to Justus, but was a subscriber in good standing when injury occurred to the six employees whose injuries resulted in the charges being made first against the account of Tazewell, and subsequently transferred to the account of the relator.

The Commissioner answered, denying the material allegations of relator's petition, and further alleging Tazewell's status as an agent of relator, and not as an independent contractor.

Two questions are raised by this record: (1) Whether the Workmen's Compensation law of this State in using the word "employer" restricts the meaning of that word to an employer who is an independent contractor; and (2) assuming that the answer to that question is in the affirmative, whether the account of the relator may be charged with expenditures made by the State Compensation Commissioner for payments made to claimants

for injuries when the only notice the relator had of such awards and charges against its account was given to Tazewell the alleged agent of the relator.

Chapter 23, Article 2, Section 1, Code of 1931, as amended by Chapter 104, Acts of the Legislature, Regular Session, 1937; Chapters 137 and 140, Acts of the Legislature, Regular Session, 1939; and Chapter 131, Acts of the Legislature, Regular Session, 1945, provides that: "All persons, firms, associations and corporations regularly employing other persons for the purpose of carrying on any form of industry or business in this State, * * * are employers within the meaning of this chapter and subject to its provisions: * * *."

Code, 23-2-4, as amended, relating to the classification by the Commissioner of industries, accounts by the Commissioner, and rate of premiums, provides in the last paragraph thereof that: "* * * It shall also be his duty to furnish each employer yearly, or oftener if requested by the employer, a statement giving the name of each of his employees who were paid for injury and the amounts so paid during the period covered by the statement."

Code, 23-5-1, as amended, provides in part that: "The commissioner shall have full power and authority to hear and determine all questions within his jurisdiction, but upon the making or refusing to make any award, or upon the making of any modification or change with respect to former findings or orders, as provided by section sixteen, article four, of this chapter, the commissioner shall give notice, in writing, to the employer, employee, claimant, or dependent, as the case may be, of his action, which notice shall state the time allowed for filing an objection to such finding, and such action of the commissioner shall be final unless the employer, employee, claimant or dependent shall, within thirty days after the receipt of such notice, object, in writing, to such finding. * * *"

Code, 25-5-1a, as amended, provides that where an injured employee makes application in writing for a fur-

ther adjustment of his claim, and the application discloses cause for such further adjustment, the Commissioner, shall, "after due notice to the employer", make such modification or change.

Code, 23-5-3, as amended, and Code, 23-5-4, as amended, provide for appeals by an employer or a claimant from final order of the Commissioner to the Workmen's Compensation Appeal Board, and from the Board to this Court within thirty days after a decision by the Commissioner or the Board.

Upon the first question stated above, this Court finds little authority in this jurisdiction, or elsewhere. The respondent relies upon *Smith* v. *Donald Coal Co.*, 92 W. Va. 253, 115 S. E. 477. In that case, an employee of an engineering company, retained by the defendant coal company to do certain surveying work in its coal mine, had engaged the plaintiff's decedent to assist in that work, and he was killed while so working. The action was against the coal company for negligently causing decedent's death, and this Court affirmed the ruling of the trial court in sustaining a demurrer to the declaration upon the ground that it did not allege facts showing that the engineering company was an independent contractor, and that the deceased was not an employee of the coal company and entitled to protection under the Workmen's Compensation Act. The pleadings do not indicate whether the engineering company was, like the coal company, a subscriber to the Workmen's Compensation Fund.

As to whether the Circuit Court of Wyoming County was correct in holding that the relationship of employer and employee existed between the relator and Justus at the time of his injury is not before this Court and that ruling is not determinative of this proceeding, even if the sole issue here to be determined was whether Tazewell was an independent contractor, or an agent of the relator. It must be remembered that at the time Justus was injured Tazewell was not a subscriber to the Workmen's Compensation Fund, but that it was such a sub-

scriber when the other six persons were injured, to whom disbursements from the Fund were made and for which this relator's account was subsequently charged. It is alleged in relator's petition, and not denied by the answer, that at the time of, and before, the injuries set out in the petition, and the charges made by the Commissioner against Tazewell, which were later transferred to the account of the relator, there had been promulgated, and in force, the following "Instruction" of the Commissioner: "3. CONTRACT LABOR—Contractors and workmen paid by the piece or quantity are considered employees of the employer in the meaning of the Workmen's Compensation Law when their employment is exclusively with and conducted on premises of, and is a part of the regular business of the employer, and the names and quarterly earnings of such Contractors and helpers must be carried on the subscriber's pay roll and premiums paid on same, providing such Contractors are not subscribers to the fund."

It is the contention of the relator that it was pursuant to the provisions of this "Instruction" that it admitted liability for the injury to Justus, and it is also upon the basis of this "Instruction", as well as the statute heretofore quoted, that the relator contends that it is not liable for charges subsequently made as a result of injuries to the other six claimants, since at the time of their injuries Tazewell was a subscriber to the Fund. It will be observed that the phrase "independent contractor" is not used in any of the pertinent provisions of the Workmen's Compensation law in referring to "employer". "Instruction 3" designated "contract labor", as heretofore quoted in full, would indicate, as the relator alleges in its petition, that the State Compensation Commissioner has, from the inception of the Workmen's Compensation law in this State, made no such differentiation in determining who may be subscribers to the Fund.

In considering the language used by the Legislature in the Sections heretofore quoted, as well as other provisions of Chapter 23 of the Code, as amended, and the

administrative interpretation of the language so used, this Court holds that a person, firm, association or corporation, regularly employing other persons for the purpose of carrying on any business in this State within the usual meaning of those words, who holds himself or itself out to be an employer, and is accepted as such by the Commissioner, is an "employer" within the meaning of the Act.

As to the second question, it is clear that the relator cannot be charged with the awards that have been made to the six claimants in question, since it received no notice thereof as provided by the Sections of the Act, heretofore quoted, and had no opportunity to object to such awards within the statutory period.

In the unemployment compensation case of *State* v. *Hix*, 141 W. Va. 385, 90 S. E. 2d. 357, Article 7, Section 8, of the Unemployment Compensation Law, (Chapter 21A-7-8, as amended), provides that: "A claimant, last employer, or other interested party, may file an appeal from the decision of the deputy within eight calendar days after notice of the decision has been delivered or mailed by registered mail to the claimant and last employer as provided in section four of this article. * * *" This Court held that where that Section was not strictly complied with, such noncompliance renders illegal the charging of the amount of compensation paid to the claimant to the merit rating of the employer. Whatever the relationship between relator and Tazewell may have been, certainly the latter, a subscriber in good standing with the Fund, was not the "agent" of the former, also a subscriber, so that notice of awards and charges against Tazewell was notice to relator.

When a person, firm, association or corporation decides to become a subscriber to the Workmen's Compensation Fund, holds himself or itself out to be an employer of labor, and is accepted as such by the Commissioner, in the absence of a showing of fraud or collusion on the part of such employer, and some other subscriber to the

Fund, to avoid just payment of premiums upon the earnings of the employees of such employer, it is immaterial whether such subscriber is or is not an independent contractor.

If this Court should construe the pertinent statutes in conformity with the contentions of the respondent State Compensation Commissioner, the facts of this case exemplify the legal and actuarial chaos with which he would be confronted in administering the Workmen's Compensation Fund. Relator's account could not be charged with expenditures made as a result of injuries to these six claimants because of lack of statutory notice of awards of benefits to them, and Tazewell would be entitled to refunds for premiums paid upon the earnings of all employees carried upon its payroll while it was a subscriber to the Fund because it was not an "employer". With the precedent established, other subscribers similarly situated could be expected to demand similar consideration. Many subscribers could thereby escape their just responsibilities, while other subscribers in no way responsible for the injuries resulting in such expenditures by the Fund would indirectly be required to pay therefor.

For the reasons heretofore stated, the writ of mandamus will issue directing the State Compensation Commissioner to expunge from the account of the relator all charges made against it as the result of payments made to the claimants Paten Lester, Elton Cline, Ervin Morgan, Estil Morgan, W. A. Morgan and Jennings Kennedy, and to fix the rate of the relator for the fiscal year 1955-1956 at such amount as the charges made in the previous year against the relator required, without taking into account the sums charged as a result of expenditures upon the claims of the six claimants above mentioned.

*Writ granted.*