295 S.E.2d 680

**George David SMITH, etc., et al.**

**v.**

**The W. VA. STATE BOARD OF EDUCATION, etc., et al., and the Roane County Board of Education, et al.**

**No. 15454.**

Supreme Court of Appeals of
West Virginia.

June 22, 1982.

Concurring and Dissenting Opinion
Sept. 8, 1982.

594

594

Daniel F. Hedges, Charleston, for petitioners.

Chauncey H. Browning, Jr., Atty. Gen., S. Clark Woodroe, Asst. Atty. Gen., Charleston, for State Bd. of Educ.

Frederick D. Fahrenz, Jeffrey K. Materly, Preiser & Wilson, Charleston, for Roane CBE.

Jacqueline A. Kinnaman, Charleston, for intervenor.

MILLER, Chief Justice:

In this original mandamus action the petitioner, George David Smith, through his parents as next friends, seeks to challenge the constitutionality of the *in loco parentis* [1] doctrine generally embodied in W.Va. Code, 18A–5–1.[2] He also contends that one

---

**1.** *In loco parentis* means "in the place of a parent; instead of a parent; charged, factitiously, with a parents rights, duties, and responsibilities." *Black's Law Dictionary*, p. 708 (5th ed.).

**2.** The material portion of W.Va.Code, 18A–5–1, is:

"The teacher shall stand in the place of the parent or guardian in exercising authority over the school, and shall have control of all

of the respondents, the West Virginia State Board of Education, has failed under W.Va. Code, 18–2–5,[3] to promulgate regulations in regard to administering corporal punishment to school children.

The petitioner's constitutional claims are predicated on Section 5 of Article III of the West Virginia Constitution prohibiting cruel and unusual punishment and the substantive due process provision in Section 10 of Article III.[4]

On September 15, 1981, Petitioner George David Smith, who was age 11 at the time and a student at Clover Elementary School, along with fellow student, James Greathouse, were "severely struck" with a wooden paddle by Respondent Jack Sharp, a teacher and the principal. As a result of the striking, Petitioner George David Smith's legs received large bruises which required medical treatment at a local hospital. Allegedly the petitioner subsequently developed a negative attitude toward school.

The respondents admit to the use of corporal punishment by Sharp who has stated that he "gave each boy three moderate licks with a wooden paddle on their buttocks." He further states that he told the boys that this punishment was for their disobeyance of school rules regarding fighting. The boys were caught fighting in the bathroom. Sharp further stated that another student, Mark Nichols, was also paddled.

## I.

The respondents initially make the procedural point that a writ of mandamus is not an appropriate remedy in this case. They recite our traditional rule found in Syllabus Point 2 of *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969):

> "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy."

*See also State ex rel. Cabell County Deputy Sheriff's Association v. Dunfee,* 163 W.Va. 539, 258 S.E.2d 117 (1979); *McGrady v. Callighan,* 163 W.Va. 539, 244 S.E.2d 793 (1978); *State ex rel. Damron v. Ferrell,* 149 W.Va. 773, 143 S.E.2d 469 (1965). Our rule regarding utilization of a writ of mandamus must be read against the back drop of Judge Haymond's statement in *Carter v. City of Bluefield,* 132 W.Va. 881, 897, 54 S.E.2d 747, 757 (1949):

> "The tendency in this jurisdiction is to enlarge and advance the scope of the remedy of mandamus, rather than to restrict and limit it, in order to afford the relief a party is entitled to when there is no other adequate and complete legal remedy."

pupils enrolled in the school from the time they reach the school until they have returned to their respective homes."

**3.** The pertinent portion of W.Va.Code, 18–2–5, is:

"Subject to and in conformity with the Constitution and laws of this State, the state board of education shall determine the educational policies of the State ... and shall make rules for carrying into effect the laws and policies of the State relating to education, including rules relating to the physical welfare of pupils, the education of feeble-minded and physically disabled or crippled children of school age, school attendance, evening and continuation or part-time day schools, school extension work, the classification of schools, the issuing of certificates upon credentials, the distribution and care of free textbooks by the county boards of education, the general pow-

ers and duties of county boards of education, and of teachers, principals, supervisors and superintendents, and such other matters pertaining to the public schools of the State as may seem to the state board to be necessary and expedient."

**4.** The petitioner apparently recognizes that *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) forecloses any argument that the cruel and unusual punishment provisions of the Eighth Amendment to the United States Constitution prohibits paddling of school children. *Ingraham* did not discuss whether a substantive due process claim under the federal constitution could be maintained. *See* Note 12, *Ingraham v. Wright,* 430 U.S. at 659, 97 S.Ct. at 1406, 51 L.Ed.2d at 723. The Fourth Circuit has found a federal substantive due process claim in a school paddling case from this State. *Hall v. Tawney,* 621 F.2d 607 (4th Cir. 1980).

The clear legal right to the relief sought is generally a question of standing. Thus, where the individual has a special interest in the sense that he is part of the class that is being affected by the action then he ordinarily is found to have a clear legal right. *Walls v. Miller,* 162 W.Va. 563, 251 S.E.2d 491 (1978). Moreover, where the right sought to be enforced is a public one in the sense that it is based upon a general statute or affects the public at large the mandamus proceeding can be brought by any citizen, taxpayer, or voter. *State ex rel. Brotherton v. Moore,* 159 W.Va. 934, 230 S.E.2d 638 (1976); *State ex rel. West Virginia Lodge, Fraternal Order of Police v. City of Charleston,* 133 W.Va. 420, 56 S.E.2d 763 (1949); *Prichard v. DeVan,* 114 W.Va. 509, 172 S.E. 711 (1934); *State ex rel. Matheny v. County Court of Wyoming County,* 47 W.Va. 672, 35 S.E. 959 (1900).

Here the petitioner is a member of the class directly affected by corporal punishment. The clear legal right of the petitioner to bring a writ of mandamus besides involving a standing issue is also entwined in the legal duty which the respondent is required to perform. This is the second element of our traditional test for the appropriateness of a writ of mandamus. There is a certain amount of legal sophistry in this area because if there were such a clear legal right on behalf of the petitioner to the relief sought and the countervailing legal duty on the respondent, the matter would be resolved without court intervention. In the usual case the matter at issue may be somewhat opaque until the court pronounces the clear legal right and duty. Typical of this category of mandamus cases is where the respondent refuses to act because he relies on an ordinance which the petitioner claims is invalid or unconstitutional. *E.g., Marra v. Zink,* 163 W.Va. 400, 256 S.E.2d 581 (1979); *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977); *State ex rel. Sheldon v. City of Wheeling,* 146 W.Va. 691, 122 S.E.2d 427 (1961); *Carter v. City of Bluefield, supra. Cf. State ex rel. McCamic v. McCoy,* 166 W.Va. 572, 276 S.E.2d 534 (1981). Much the same utilization of the writ of mandamus has been made in regard to the validity of statutes. *E.g., State ex rel. Kanawha County Building Commission v. Paterno,* 160 W.Va. 195, 233 S.E.2d 332 (1977); *State ex rel. West Virginia Housing Development Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545 (1969); *State ex rel. Smith v. Kelly,* 149 W.Va. 381, 141 S.E.2d 142 (1965); *State ex rel. Wheeling Downs Racing Commission v. Perry,* 148 W.Va. 68, 132 S.E.2d 922 (1963).

The petitioner in this case seeks to challenge the constitutionality of W.Va.Code, 18A-5-1, insofar as it permits through the *in loco parentis* doctrine corporal punishment of school children. In addition he seeks to have the respondent, the State Board of Education, promulgate proper regulations in regard to corporal punishment under its rule making authority contained in W.Va.Code, 18-2-5. We have in the past permitted the writ of mandamus to be brought against public officials who have some positive duty to act and who fail to do so. In *State ex rel. Brotherton v. Moore, supra,* we required the governor to fill a vacancy in a public office. We have permitted writs of mandamus to be brought against the Workmen's Compensation Commissioner for failure to properly classify an employer's account and to correct an overcharge. *State ex rel. Red Jacket Coal Corp. v. Stokes,* 142 W.Va. 126, 94 S.E.2d 634 (1956); *Puritan Coal Corporation v. Davis,* 130 W.Va. 20, 42 S.E.2d 807 (1947). More recently we have sanctioned a mandamus against the Workmen's Compensation Commissioner to enter some award for permanent partial disability. *Wilson v. Lewis,* 166 W.Va. 273, 273 S.E.2d 96 (1980). These decisions are predicated on the finding that the respondent had a statutory duty to act and had failed to do so or had acted improperly. Similarly in our recent case of *United Mine Workers of America v. Miller,* 170 W.Va. 177, 291 S.E.2d 673 (1982), we found that the respondent had a statutory duty to prescribe enforcement procedures and had failed to act and as a consequence a writ of mandamus would lie to compel him to act.

Finally, as to the third element, the lack of another adequate remedy, we have stated in Syllabus Point 2 of *Stowers v. Blackburn,* 141 W.Va. 328, 90 S.E.2d 277 (1955):

"Mandamus will not be denied because there is another remedy, unless such other remedy is equally beneficial, convenient and effective."

In *State ex rel. Board of Education of the County of Kanawha v. Dyer,* 154 W.Va. 840, 179 S.E.2d 577 (1971), which involved a mandamus proceeding by the Board to compel the issuance of a license to operate a school of beauty culture, we held that an administrative appeal to the circuit court and to this Court was not an equally beneficial remedy as an original writ of mandamus. There is a premise, perhaps not specifically articulated, in our mandamus cases that where the legal issue is of a substantial public policy nature,[5] we will accept an original writ of mandamus rather than force the petitioner to try the issue through administrative proceedings or in a lower court. *E.g., Walls v. Miller, supra; State ex rel. Board of Education of the County of Kanawha v. Dyer, supra; Stowers v. Blackburn, supra; Carter v. City of Bluefield, supra.*

■ In the present case, we believe that petitioner's initial constitutional challenge to the *in loco parentis* concept embodied in W.Va.Code, 18A–5–1, when coupled with the failure of the West Virginia State Board of Education to make a rule relative to corporal punishment under W.Va.Code, 18–2–5, are sufficient predicates to warrant our accepting the petition for writ of mandamus. These are issues of substantive public importance bearing upon the welfare and conduct of pupils and teachers throughout this State.

## II.

■ We decline to address the petitioner's constitutional claims as we believe that the *in loco parentis* doctrine contained in W.Va.Code, 18A–5–1, is merely an embodiment of the common law concept which the courts have historically shaped and the issue in this case can be resolved under this doctrine. We have not had occasion to consider the scope of the common law doctrine of *in loco parentis* as it relates to school children. Its general embodiment in W.Va.Code, 18A–5–1, leads us to conclude that our Legislature intended to import the common law contours of this doctrine into the statute. One of the axioms of statutory construction is that a statute will be read in context with the common law unless it clearly appears from the statute that the purpose of the statute was to change the common law. *E.g., Wicks v. City of Charlottesville,* 215 Va. 274, 208 S.E.2d 752 (1974); *cf. Coal & Coke Ry. Co. v. Conley,* 67 W.Va. 129, 67 S.E. 613 (1910);[6] 2A Sands, *Sutterland Statutory Construction,* 268 *et seq.* (1973 ed.).

The doctrine of *in loco parentis* originated in the English common law and recognizes that a parent delegates part of his parental authority to school personnel while the child is in their custody and for purposes consonant to the school setting.[7]

---

**5.** A distinct class of cases are those involving election controversies where we have recognized the need for a prompt disposition of the issue prior to the election so that the voters may properly exercise their franchise as to eligible candidates. *E.g., State ex rel. Bromelow v. Daniel,* 163 W.Va. 532, 258 S.E.2d 119 (1979); *State ex rel. Maloney v. McCartney,* 159 W.Va. 513, 223 S.E.2d 607 (1976), *appeal dismissed, Moore v. McCartney,* 425 U.S. 946, 96 S.Ct. 1689, 48 L.Ed.2d 190; *State ex rel. Cline v. Hatfield,* 145 W.Va. 611, 116 S.E.2d 703 (1960).

**6.** Inherent in this principle is this Court's recognition that the Legislature may by statute alter the common law. Where there is a common law principle that is developed by the courts, we have recognized, as have other courts, the right

to alter existing case law by later case decision. This subject was discussed at some length in *Morningstar v. Black & Decker Mfg. Co.,* 162 W.Va. 857, 253 S.E.2d 666 (1979). *Morningstar* or what is stated here should not be read as impeding the authority of the Legislature to overrule common law cases by enacting specific statutes.

**7.** An extensive summary of the *in loco parentis* doctrine is contained in S. Goldstein, *The Scope and Sources of School Board Authority to Regulate Student Conduct and Status: A Nonconstitutional Analysis,* 117 U. of Pa.L.Rev. 373 (1969), where this statement is found:

"Yet, the view that the school board has plenary power over pupils in school is an oversimplification and distortion of the *in loco parentis* doctrine.

Some commentators question the rationality of the parental delegation in view of compulsory school attendance laws.[8] Although the origin of the doctrine may have been rooted in a voluntary school system, the doctrine has been followed in this country even though there is compulsory school attendance. *E.g., Axtell v. LaPenna,* 323 F.Supp. 1077 (W.D.Pa.1971); *Whitfield v. Simpson,* 312 F.Supp. 889 (E.D.Ill.1970); *Suits v. Glover,* 260 Ala. 449, 71 So.2d 49, 43 A.L.R.2d 465 (1954); *Brooks v. Jacobs,* 139 Me. 371, 31 A.2d 414 (1943); *Laucher v. Simpson,* 28 Ohio App.2d 195, 57 Ohio Op.2d 303, 276 N.E.2d 261 (1971); 79 C.J.S. *School and School Districts* § 493 (1952 ed.).

Even though the *in loco parentis* doctrine covers more than the discipline of school children, it is not without constitutional limitations. For example, in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the United States Supreme Court determined that students could not be expelled without some procedural due process. And in *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), recognition was given to the First Amendment right of free speech to school students who wore black arm bands to protest the Vietnam war.[9]

Several states have by statute prohibited the use of corporal punishment in schools.[10] Other states by statute have proscribed the use of corporal punishment by requiring prior parental approval,[11] notification,[12] by expressly providing that it must be reasonable[13] or by limiting its use only after other methods of punishment have been attempted.[14]

In those states that have no particular statute controlling the use of corporal punishment, the courts have generally held that under the doctrine of *in loco parentis* reasonable corporal punishment may be used but if it is excessive the teacher may be liable for damages. *E.g., Tinkham v. Kole,* 252 Iowa 1303, 110 N.W.2d 258 (1961); *Carr v. Wright,* 423 S.W.2d 521 (Ky.1968); *McKinney v. Green,* 379 So.2d 69 (La.App.1979).

In one of our earlier cases, and the only one that appears to have touched upon the

---

"The classic statement of the doctrine comes from Blackstone:
'[A parent] may also delegate part of his parental authority, during his life, to the tutor or schoolmaster of his child; who is then *in loco parentis,* and has such a portion of the power of the parent committed to his charge, *viz.* that of restraint and correction, as may be necessary to answer the purposes for which he is employed.' 1 W. Blackstone, Commentaries *453.

\*   \*   \*   \*   \*   \*

"However, it is significant that Blackstone's statement does not support a doctrine that school authorities *completely* displace parental authority during the school day. The Blackstonian *in loco parentis* theory gives the school authorities only that 'portion of the power of a parent ... *as may be necessary to answer the purposes for which he is employed."* (Emphasis in original)

**8.** Note, *The In Loco Parentis Status of Illinois Schoolteachers: An Unjustifiably Board Extension of Immunity,* 10 John Marshall J. of Prac. & Proc. 599, 625–26 (1977). Note, *In Loco Parentis and Due Process: Should These Doctrines Apply to Corporal Punishment?,* 26 Baylor L.Rev. 678, 679 (1974).

**9.** In *Tinker v. Des Moines Independent Community School District,* 393 U.S. at 511, 89 S.Ct. at 739, 21 L.Ed.2d at 740 (1969), the Supreme Court made this observation:

"In our·system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they.themselves must respect their obligations to the State."

**10.** Hawaii, Hawaii Rev.Stat. § 298–16; Massachusetts, Mass.Gen.Laws Ann. ch. 71 § 37G; New Jersey, N.J.Stat.Ann. § 18A:6–1. Corporal punishment has also been prohibited by school districts of several large cities including Baltimore, New York, Chicago, Boston, Pittsburgh, Philadelphia and San Francisco. Today's Education 60 (Dec. 1972).

**11.** California, Cal.Educ.Code §§ 49000–49001.

**12.** Montana, Mont.Rev.Codes Ann. § 75–6109.

**13.** North Carolina, N.C.Gen.Stat. § 115–146; Ohio, Ohio Rev.Code Ann. § 3319.41; Vermont, Vt.Stat.Ann. tit. 16, § 1161; Virginia, Va.Code § 22–1–280.

**14.** Nevada, Nev.Rev.Stat. § 392.465.

question of corporal punishment of a child, we recognized in *State v. McDonie*, 89 W.Va. 185, 197, 109 S.E. 710, 715 (1921), that the right to punish is not absolute:

> "A parent, or one standing in loco parentis, has the authority to administer chastisement or correction to his child...., but it has never been recognized that this chastisement or correction could go beyond what the child's reasonable welfare demands. It has never been recognized that a parent has the right or power to maim or disfigure or disable a child simply because he might be stubborn and not respond to correction in the manner the parent might think proper."

In *McDonie* a stepfather had been criminally prosecuted for physically abusing his wife's child.

It cannot be doubted that in recent years society has become increasingly aware of the plight of children subject to parental abuse.[15] Our Legislature has responded by enacting statutes which curtail the right of parents to abuse or neglect their children and enable the State to intervene and remove the child from the custody of its parents.[16] This enlightened Legislative response suggests to us that the ancient doctrine of *in loco parentis* has been legislatively curtailed.

Moreover in a related area, under the doctrine of *parens patriae*,[17] which historically applies to those individuals who become wards of the state because of being under age or mentally disabled, we have held the state's authority is not absolute.

In *State ex rel. Hawks v. Lazaro*, 157 W.Va. 417, 202 S.E.2d 109 (1974), we concluded that the doctrine of *parens patriae* could not be extended to avoid certain procedural due process steps in the involuntary committment of the mentally ill. Much the same reasoning was applied against the *parens patriae* doctrine in *State ex rel. Harris v. Calendine*, 160 W.Va. 172, 233 S.E.2d 318 (1977), where we spoke on the constitutional perimeters surrounding the incarceration of juvenile status offenders.

■ We believe the doctrine of *in loco parentis* as contained in W.Va.Code, 18A–5–1, in light of the present day standards and legislative enactments in the child abuse area cannot be interpreted as permitting corporal punishment of public school children by means of a paddle, whip, stick or other mechanical devices. In the vast majority of cases where the question of excessive force has arisen in suits against teachers, they have involved the use of such mechanical contrivances. To sanction this type of physical punishment in a school context under the doctrine of *in loco parentis* is to ignore those cases that have held such practices are impermissible when applied to persons incarcerated in the penal system. *E.g., Nelson v. Heyne*, 491 F.2d 352 (7th Cir. 1974), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (use of wooden paddles on incarcerated juveniles); *Wiltie v. California Department of Corrections*, 406 F.2d 515 (9th Cir. 1969) (beating of a prisoner); *Jackson v. Bishop*, 404 F.2d 571 (8th Cir. 1968) (whipping adult

---

**15.** A concise history of the child abuse movement is contained in *Bowers v. State*, 283 Md. 115, 389 A.2d 341 (1978), where the court upheld the Maryland child abuse statute against a claim that it was constitutionally void because of vagueness.

**16.** For example, W.Va.Code, 49–1–3, defines an "abused child" as follows:

> "Whose parent, guardian or custodian inflicts or attempts to inflict or allows to be inflicted as a result of inadequate supervision, physical injury or substantial emotional injury upon the child which endangers the present physical or mental health of such child or inflicts, attempts to inflict, or knowingly allows to be inflicted sexual abuse upon the child."

W.Va.Code, 49–6–1 *et seq.*, sets out the procedure for the State Department of Welfare to obtain either temporary or permanent custody of abused or neglected children. W.Va.Code, 49–6A–1 *et seq.*, contains mandatory reporting procedures for suspected child abuse or neglect cases, including abrogation of the privileged communication between husband and wife in situations involving child abuse and neglect. W.Va.Code, 49–6A–7.

**17.** *Parens patriae* means "parent of the country" and "refers traditionally to [the] role of [the] [S]tate as [the] sovereign and guardian of persons under legal disability." *Black's Law Dictionary*, p. 1003 (5th ed.). *See State of West Virginia v. Chas. Pfizer Co.*, 440 F.2d 1079, 1089 (4th Cir.1971).

prisoners with leather strap); *Johnson v. Al Lark*, 365 F.Supp. 289 (E.D.Mo.1973) (striking of a prisoner by the warden); *Morales v. Turman*, 364 F.Supp. 166 (E.D. Tex.1973) (beating, slapping and kicking prisoners); *Harrah v. Leverette*, 165 W.Va. 665, 271 S.E.2d 322 (1980) (dispensing tear gas on prisoners); *State ex rel. K. W. v. Werner*, 161 W.Va. 192, 242 S.E.2d 907 (1978) (punitive practices); *cf. State ex rel. Pingley v. Coiner*, 155 W.Va. 591, 186 S.E.2d 220 (1972). These cases dealt with cruel and unusual punishment and civil rights concepts but we see no reason why we cannot draw on them by way of analogy in considering the scope of the common law doctrine of *in loco parentis* as it relates to corporal punishment by way of paddles or related devices.

■ The limiting force of our opinion is directed at the use of whips, paddles or other contrivances to administer corporal punishment. The very nature of these devices is such that their use often leads to excessive force and injury. We believe that the doctrine of *in loco parentis* cannot be interpreted in light of current attitudes, particularly as reflected in our child abuse statutes, as permitting corporal punishment by mechanical devices. Our decision does not prohibit the spanking by hand, the physical seizure and removal of unruly students from the classroom nor the use of physical force to restrain students from fighting or engaging in destructive or illegal acts.

Although we have declined to address the petitioner's constitutional arguments relative to cruel and unusual punishment and substantive due process claims, we do believe that some minimal procedural due process must be afforded before manual corporal punishment can be utilized as a disciplinary measure. In *North v. Board of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977), we discussed procedural due process standards under Section 10 of Article III of the West Virginia Constitution. We also recognized the concepts of "liberty" and "property" interests which have generally been held to trigger a procedural due process inquiry and cited *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In *North*, we relied on *Goss v. Lopez, supra*, which held that some procedural due process must attend the expulsion of students from public school.[18] In *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977), we further developed the concepts of liberty and property under the due process clause, Section 10 of Article III of our Constitution. We have no difficulty in holding that a liberty interest is implicated not only when the State makes a charge against an individual that might seriously damage his standing and association in his community[19] but also when the state attempts to undertake disciplinary measures involving manual corporal punishment of school children. In Syllabus Point 5 of *Waite*, we stated the following test to determine the extent of procedural due process:

"The extent of due process protection affordable for a property [or liberty] interest requires consideration of three distinct factors: first, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of a property interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

---

**18.** *Goss v. Lopez, supra,* was primarily relied upon by the four dissenting justices in *Ingraham v. Wright, supra,* in stating that school children were entitled to some procedural due process protection before they could be paddled.

**19.** In Syllabus Point 2 of *Waite, supra,* we said: "The 'liberty interest' includes an individual's right to freely move about, live and work at his chosen vocation, without the burden of an unjustified label of infamy. A liberty interest is implicated when the State makes a charge against an individual that might seriously damage his standing and associations in his community or places a stigma or other disability on him that forecloses future employment opportunities."

Here the private interest that is affected by the official action is being subjected to corporal punishment. We have previously limited the use of this type of punishment and even though manual corporal punishment is permissible, it must still be moderate. We cannot say that this private interest is so minimal that no due process should be afforded. When we turn to the second consideration, the risk of an erroneous application of corporal punishment and whether there is any present safeguards to diminish this problem, we find no present procedural safeguards since the state has not promulgated any. We also find that there are in regard to the third factor, valid reasons not to impose substantial procedural due process safeguards. Certainly if disciplinary measures must be taken, they should be permitted to occur rather promptly following the disturbance. Moreover the intrusion on the person's privacy is not severe and under *North's* standard, procedural protection is accorded based on the severity of the rights deprived.

■ We conclude that the following minimal due process procedures should be utilized. First, the student should be given an opportunity to explain his version of the disruptive event as such an explanation may convince a fair minded person that corporal punishment is not warranted. Second, in the absence of some extraordinary factor the administration of corporal punishment should be done in the presence of another adult. This latter requirement is designed to protect both the student and the person administering corporal punishment by providing a neutral observer.[20]

We, therefore, conclude that a writ of mandamus should be issued directing the State Board of Education to promulgate corporal punishment regulations not inconsistent with the standards set out herein.

Writ Issued.

McHUGH, Justice, concurring in part and dissenting in part:

I concur with the majority in this action in regard to the recognition by the majority that the common law doctrine of *in loco parentis*, as that doctrine relates to public schools, is embodied in *W. Va. Code*, 18A–5–1 [1969]. I, therefore, agree that although the right of school authorities to punish public school children is not absolute, limited corporal punishment of public school children is permissible.

My disagreement with the majority concerns its use of the child abuse standards and legislative enactments as the basis for its decision in this action. Certainly, child abuse must not be condoned in the home or in the public schools under any circumstances. However, I believe that it is not sound logic to indicate that the doctrine of *in loco parentis* and *W. Va. Code*, 18A–5–1 [1969], must be interpreted in light of the child abuse standards and legislative enactments to preclude paddling. The wisdom of paddling, as a disciplinary measure, in the public schools is an issue of great importance, but it is not necessarily a judicial issue. Whether or not paddling is a legally permissible method of discipline is a judicial issue. The majority concludes that paddling is not legally permissible. I am concerned with the reasoning by which the majority reaches that conclusion.

I do not deny that this Court has the power to modify the common law of this State. However, the West Virginia Legislature has entered the area of discipline in the public schools by the enactment of *W. Va. Code*, 18A–5–1 [1969], which statute

---

20. In the absence of any state regulation on corporal punishment the Roane County Board of Education commendably perceived the need for some uniform guidance to its personnel and promulgated the following policy:

"The use of excess physical force by school officials is illegal. Moderate, corporal punishment used to enforce discipline is permitted by law. However, such punishment must not be wanton or malicious, must not be in excess of the offense and should be used only as a last resort.

"Corporal punishment must be administered by the principal or assistant principal or by a teacher with the permission of the principal. In all cases, corporal punishment must be administered in the presence of an adult employee of the Roane County Board of Education."

expressly states, in part, as follows: "The teacher shall stand in the place of the parent or guardian in exercising authority over the school, and shall have control of all pupils enrolled in the school from the time they reach the school until they have returned to their respective homes...." Therefore, the doctrine of *in loco parentis* as it relates to the action before this Court is a matter of statutory law.

*W. Va. Code,* 18A–5–1 [1969], does not prohibit the paddling of public school children. Rather, in terms of discipline in the public schools, that statute places the school authorities "in the place of the parent or guardian." Thus, because parents are also subject to the child abuse standards and legislative enactments, the majority's conclusion that school authorities may not paddle public school children necessarily implies that parents as well may not paddle their children. The constitutional issues not being decided by the Court in this action, I am of the opinion that, in view of *W. Va. Code,* 18A–5–1 [1969], it is for the Legislature rather than this Court to decide whether public school children may be disciplined by means of paddles.

Miller, C. J., filed a concurring opinion.

Neely, J., filed a dissenting opinion.