# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**LOGAN COUNTY BOARD OF EDUCATION and**
**WEST VIRGINIA DEPARTMENT OF EDUCATION,**
**Respondents Below, Petitioners**

**FILED**
**December 23, 2024**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-64**   (Grievance Bd. Case No. 2023-0581-CONS)

**BRIANA MARY CRISP and**
**ERICA REANN LOCKHART,**
**Grievants Below, Respondents**

## MEMORANDUM DECISION

Petitioners the Logan County Board of Education ("Logan BOE") and West Virginia Department of Education ("WVDE") appeal the January 22, 2024, Decision of the West Virginia Public Employees Grievance Board ("Board"). The Decision granted the grievances of Respondents Briana Mary Crisp and Erica Reann Lockhart, finding that Logan BOE had violated West Virginia Code § 18A-4-14 (2017) by requiring them to cover other classrooms during their statutorily prescribed planning periods. Respondents filed a joint response.[1] Petitioners did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Respondents are employed by Logan BOE as full-time teachers at Logan County High School ("LHS"). On January 19, 2023, they filed separate grievances against Logan BOE, protesting its repeated practice of requiring them to give up their planning periods to cover other LHS classrooms in violation of West Virginia Code § 18A-4-14, which they asserted statutorily guaranteed them a daily, duty-free planning period. Relevant to this appeal, West Virginia Code § 18A-4-14 provides:

> (a) Notwithstanding section seven, article two of this chapter, every teacher who is employed for a period of time more than one half the class periods of the regular school day and every service person whose employment is for a

---

[1] Petitioners are represented by Donald C. Wandling, Esq. Respondents are represented by Jeffrey G. Blaydes, Esq.

1

period of more than three and one-half hours per day and whose pay is at least the amount indicated in the state minimum pay scale as set forth in section eight-a of this article shall be provided a daily lunch recess of not less than thirty consecutive minutes, and the employee shall not be assigned any responsibilities during this recess. The recess shall be included in the number of hours worked, and no county shall increase the number of hours to be worked by an employee as a result of the employee being granted a recess under this section.

(b) Every teacher who is regularly employed for a period of time more than one half the class periods of the regular school day shall be provided at least one planning period within each school day to be used to complete necessary preparations for the instruction of pupils. No teacher may be assigned any responsibilities during this period, and no county shall increase the number of hours to be worked by a teacher as a result of such teacher being granted a planning period subsequent to the adoption of this section (March 13, 1982). Educators shall receive uninterrupted time for planning periods each day. Administrators may not require a teacher to use the planning period time allotted to complete duties beyond instructional planning, including, but not limited to, administrative tasks and meetings.

The duration of the planning period shall be in accordance with the following:

(1) For grades where the majority of the student instruction is delivered by only one teacher, the planning period shall be no less than forty minutes; and

(2) For grades where students take separate courses during at least four separate periods of instruction, most usually delivered by different teachers for each subject, the planning period shall be the length of the usual class period taught by the teacher, but no less than forty minutes. Principals, and assistant principals, where applicable, shall cooperate in carrying out the provisions of this subsection, including, but not limited to, assuming control of the class period or supervision of students during the time the teacher is engaged in the planning period. Substitute teachers may also be utilized to assist with classroom responsibilities under this subsection: *Provided,* That any substitute teacher who is employed to teach a minimum of two consecutive days in the same position shall be granted a planning period pursuant to this section.

(c) Nothing in this section prevents any teacher from exchanging his or her lunch recess or a planning period or any service person from exchanging his or her lunch recess for any compensation or benefit mutually agreed upon by the employee and the county superintendent or his or her agent: *Provided*, That a teacher and the superintendent or his or her agent may not agree to terms which are different from those available to any other teacher granted rights under this section within the individual school or to terms which in any way discriminate among those teachers within the individual school, and a service person granted rights under this section and the superintendent or his or her agent may not agree to terms which are different from those available to any other service personnel within the same classification category granted rights under this section within the individual school or to terms which in any way discriminate among those service personnel within the same classification category within the individual school.

According to respondents, their grievances arose when LHS changed its internal policy for classroom coverage and student supervision around December of 2022. Previously, when teachers were sick or absent, LHS would seek substitute teachers first. If there was still a need for coverage, then teachers who volunteered to give up their planning period were utilized. LHS administrators would also cover classes, and administrators from Logan BOE's central office were also an option for coverage and student supervision. If there were insufficient personnel to meet coverage and supervision needs, LHS would use a gymnasium and theatre on its campus to facilitate student supervision. Under this system, the school made an announcement each morning wherein all students were told which classes, if any, would, for instance, report to the gym or theatre for the day. Prior to December of 2022 there were documented instances where LHS had three to eleven teachers absent at a time.

However, WVDE assumed control of Logan BOE just prior to December of 2022, based upon its finding of several issues with the management and administration of the school system. There was no mention of teacher absenteeism or student supervision as a basis for the takeover. WVDE appointed Jeff Huffman ("Superintendent Huffman") as interim superintendent of schools, and he was later hired to the permanent position. Around December of 2022, Superintendent Huffman, citing parental complaints and other observations, directed LHS' principal, Kelly Stanley ("Principal Stanley"), to revise the school's practice for classroom coverage and related student supervision. Thereafter, LHS began taking planning periods from teachers, including from those who did not agree to give up their planning period. Under this new system, a sign was placed on the door of the absent teacher's classroom, informing students to report to an alternate classroom. The gymnasium and theatre were not permitted to be used for coverage. Also, under this system, covering teachers did not have specific instructions on how to cover the class, were not given complete or updated class rosters, and were not required to teach that day's lesson.

The respondents claimed they were forced to give up their planning periods to cover unsupervised classrooms on several occasions over their objections.

At the request of the respondents, their grievances were consolidated by the Board, and on or about January 24, 2023, the WVDE was joined as a party. An administrative hearing was held in the matter on September 13, 2023, and October 13, 2023. According to the Decision, Respondent Crisp testified that a planning period is the only "student free" time a teacher has during an instructional day. During her planning period, she grades papers; prepares lesson plans; answers students' questions remotely; makes copies (at a copier some distance from her classroom); cleans; utilizes Google classroom; designs units; prepares the bulletin board; chairs an honors society; gets a snack; and takes a restroom break. Similarly, Respondent Lockhart stated that her planning period is used for grading; preparing lesson plans; copying; cleaning; getting supplies; utilizing Google classroom; processing Learning Community data; doing literary initiative work; addressing social issues with the school counselor; and taking restroom breaks or getting a snack. It is undisputed that respondents informed LHS administration that they did not consent to foregoing their planning periods. According to Respondent Crisp, the new system created confusion and led to more students skipping class or leaving LHS' campus.

Principal Stanley's testimony offered the general contention that Superintendent Huffman directed her to provide coverage and supervision using classrooms and available teachers without the use of the gym or theatre. She acknowledged that LHS had taken respondents' planning periods without their consent and over their objections. Principal Stanley could not explain why respondents lost planning time while others, such as substitute teachers who were working at LHS on days when one or both respondents lost their planning periods, did not. Nor could she explain what staff shortages, emergency or exigent circumstances existed, if any, on the days where respondents were denied their planning periods. Notably, the Decision also found that, contrary to Principal Stanley's testimony, respondents were not the only teachers who sought to maintain their planning periods, but rather, that the evidence established that there were approximately eighteen teachers who objected to giving up their planning periods to provide coverage.

Superintendent Huffman admitted that Ms. Crisp and Ms. Lockhart have been regularly denied their planning periods but claimed those denials were justified over his concerns regarding supervision. He further testified that in December of 2022, he believed that the gym and theatre did not provide adequate settings for the supervision of students when the school was short staffed. However, based upon the record, it was determined that since December of 2022, those two areas continue to be used to supervise students; namely, the entire student body reports to the gym each morning, and the gym and theatre are used to organize and supervise students for field trips. Also, Superintendent Huffman could not explain an e-mail dated May 24, 2023, wherein Respondent Lockhart was informed that she was losing her planning periods for eight consecutive school days even though no staff shortages had been established for any of those forthcoming days.

4

Before the Board, petitioners argued that its concerns over student supervision required it to take planning periods due to emergencies or exigent circumstances at LHS. It was contended that teacher absenteeism and a shortage of willing substitute teachers prompted it to implement a new method of supervising students when adequate substitutes and administrators were not available. In support, Logan BOE claimed that the language of West Virginia Code § 18A-5-1(a) (2023)[2] provides that school personnel have *in loco parentis* authority to stand in the place of the parents to exercise authority over the students.

In its Decision, the Board found petitioners' reliance on issues with student supervision and staff shortages to be pretextual and unsupported by the record. The Board rejected their interpretation of West Virginia Code § 18A-5-1(a), finding that nothing within that statute permitted the unilateral denial of a teacher's statutory right to a planning period under West Virginia Code § 18A-4-14. Instead, the Board determined that the plain language of the statute showed that our Legislature intended for planning periods to be mandatory. The Board found this determination to be consistent with the decision of our Supreme Court of Appeals of West Virginia ("SCAWV") in *Gant v. Waggy*, 180 W. Va. 481, 377 S.E.2d 473 (1988) (per curiam). The issue in *Gant* was whether, pursuant to West Virginia Code § 18A-4-14, a board of education had the authority to break a teacher's planning period up into different time segments throughout a school day to prevent potential issues with school scheduling and personnel availability. *Id.* The SCAWV found that county boards of education did not have such authority, explaining as follows:

> In W. Va. Code [§] 18A–4–14, the Legislature has indicated that there will be at least one planning period within each regular school day and that "such planning period shall be the length of the usual class period in the school to which the teacher is assigned and shall not be less than thirty minutes." This Court believes that the plain meaning of this language is inescapable. Each teacher must be provided with at least one planning period of the length of the usual class period in the school, but no shorter than thirty minutes.

---

[2] For simplicity, we cite to the current version of the statute, noting its language mirrors the former version of the statute, West Virginia Code § 18A-5-1(a) (2008), which was in effect at the time of the underlying case. To that end, West Virginia Code § 18A-5-1(a) provides:

> The teacher shall stand in the place of the parent(s), guardian(s), or custodian(s) in exercising authority over the school and has control of all students enrolled in the school from the time they reach the school until they have returned to their respective homes, except where transportation of students is provided, the driver in charge of the school bus or other mode of transportation shall exercise such authority and control over the students while they are in transit to and from the school.

In arguing that the plain meaning of the statute should not be applied, the appellees have suggested that providing the teachers with a planning period at least the length of a regular school period might cause scheduling and personnel disruption in the Pendleton County schools. This Court does not find this to be so impelling a reason as to permit deviation from the Legislature's obvious intention. The Court believes that there are valid reasons for providing a teacher with a sufficiently long and uninterrupted planning period, the most salient of which is to afford the teacher with an opportunity to review, organize, and reflect on the material which is to be taught. Teaching is the fundamental function of the schools, and this Court believes that the obvious benefit of the provision of an appropriate planning period on the teaching process outweighs the negative scheduling effect that compliance with the legislative mandate might entail.

*Id.* at 483, 377 S.E.2d at 475 (emphasis added). The Decision also found that "[s]chool personnel regulations and laws are to be strictly construed in favor of the employee." Syl. Pt. 1, *Morgan v. Pizzino*, 163 W. Va. 454, 256 S.E.2d 592 (1979). Moreover, it was noted that to the extent that West Virginia Code § 18A-5-1 and West Virginia Code § 18A-4-14 dealt with the same subject matter and were in conflict, West Virginia Code § 18A-4-14 controlled and took precedence as the more specific statute. *See Int'l Union of Operating Eng'rs v. L.A. Pipeline Const. Co.*, 237 W. Va. 261, 267, 786 S.E.2d 620, 626 (2016) (noting that where two statutes apply to the same subject matter, the more specific statute prevails over the general statute).

Considering those principles, the Board determined that absent a separate agreement, a teacher has a statutory right to a full, duty-free planning period. W. Va. Code § 18A-4-14(c) (stating that a teacher may enter into an agreement with the county superintendent or his or her designated representative to forego their planning period in exchange for other compensation or benefits). Here, the Board found that neither Respondent Crisp nor Respondent Lockhart had entered into any such agreement. As such, it was determined that petitioners had unilaterally denied both respondents their statutorily required planning period on multiple occasions.[3] The Board ordered LHS to cease its practice of requiring teachers to give up their planning period without their written consent. It was further ordered that respondents be provided makeup planning periods for each of the planning periods they lost. It was directed that the makeup planning periods be in addition to their normal planning periods required by statute. This appeal followed.

In this appeal, our governing standard of review is as follows:

---

[3] Specifically, the Board determined that between the 2022-23 and 2023-24 school years, Respondent Crisp had lost fourteen planning periods and that Respondent Lockhart had lost thirteen planning periods during the same period.

6

> A party may appeal the decision of the administrative law judge on the grounds that the decision:
>
> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
>
> (2) Exceeds the administrative law judge's statutory authority;
>
> (3) Is the result of fraud or deceit;
>
> (4) Is clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 6C-2-5(b) (2007);[4] *accord* W. Va. Code § 29A-5-4(g) (2021) (specifying the standard for appellate review of administrative appeal). Likewise, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996); *see also,* Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) (on appeal, a court may not overturn a finding simply because it would have decided case differently); Syl. Pt. 1, *Francis O. Day Co., Inc., v. Dir., Div. of Env't Prot.*, 191 W. Va. 134, 443 S.E.2d 602 (1994) (evidentiary findings should not be reversed unless clearly wrong); *Princeton Cmty. Hosp. v. State Health Plan.*, 174 W. Va. 558, 564, 328 S.E.2d 164, 171 (1985) ("[A]n agency's determination of matters within its area of expertise is entitled to substantial weight.").

On appeal, petitioners set forth five assignments of error, contending the Board committed multiple errors in its Decision. Upon review, we have determined that petitioners' argument only address two of the listed assignments of error: (1) The Board erred by finding that petitioners had violated West Virginia Code § 18A-4-14; and (2) The Board erred when it determined that petitioners could not use the *in loco parentis* doctrine in West Virginia Code § 18A-5-1 to suspend the requirements of West Virginia Code §18A-4-14 in light of the exigent circumstances at LHS.[5] Therefore, we deem the remaining assignments of error to be waived.[6] *See* Syl. Pt. 6, *Addair v. Bryant*, 168 W. Va.

---

[4] Although West Virginia Code § 6C-2-5 was substantively amended, effective March 1, 2024, the former version of the statute was in effect at the time the Board's decision was entered and applies to this case.

[5] These were identified as petitioners' first and fifth assignments of error.

[6] Specifically, petitioners' brief failed to argue its second, third, and fourth assignments of error, namely: (2) The Board erred in ordering petitioners to discontinue the practice of requiring teachers to give up their planning periods without their written consent; (3) The Board erred by granting respondents makeup planning periods; and (4)

306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."); *Brown v. W. Va. Univ.*, No. 23-ICA-328, 2024 WL 3582141, at *3 n.5 (W. Va. Ct. App. July 30, 2024) (memorandum decision) (declining to address assignments of error not argued in brief on appeal); W. Va. R. App. P. 10(c) (stating this Court may disregard errors not adequately supported by specific references to the appellate record).

Petitioners maintain that the Board erred in finding that they had violated West Virginia Code § 18A-4-14. On this issue, it is asserted that staff shortages at LHS resulted in inadequate student supervision, and that the shortage required the taking of respondents' planning periods to provide coverage for unsupervised classrooms. It is also contended that these issues justified Superintendent Huffman's directive to adopt this practice. We find no merit in this argument.

Aside from offering this general assertion, petitioners provide no actual argument concerning the Board's interpretation and application of West Virginia Code § 18A-4-14 or to differentiate this case from the holding in *Gant*. Likewise, petitioners make no argument, supported by appropriate citations to the record, to challenge the Board's determination that there was no evidence of staff shortages or student supervision issues at LHS. It is well established that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *see also* W. Va. R. App. P. 10(c)(7) (requiring a petitioner's brief to include "an argument exhibiting clearly the points of fact and law presented . . . and citing the authorities relied on"). As such, upon review of the Board's ruling, we conclude that it did not err in its determination that petitioners violated West Virginia Code § 18A-4-14.

Petitioners also argue that the Board erred when it determined that they could not rely upon the *in loco parentis* doctrine under West Virginia Code § 18A-5-1 to circumvent the requirements of West Virginia Code § 18A-4-14 and implement a new classroom coverage policy which they believed provided for the safety and supervision of the students at LHS. According to petitioners, the Legislature intended for West Virginia Code § 18A-5-1 to take precedence over any competing statute, relying upon the SCAWV's decision in *Smith v. West Virginia State Board of Education*, 170 W. Va. 593, 295 S.E.2d 680 (1982). We disagree.

To begin, we find that *Smith* exclusively addressed the application of *in loco parentis* doctrine under West Virginia Code § 18A-5-1 to a school system's corporal punishment of students. *Id.* at 594, 295 S.E.2d at 681, syl. pts. 3-5. Thus, it has no precedential effect on the issue in this case, and petitioners offer no other authority to

The Board erred by finding that exigent circumstances did not exist to justify petitioners' unilateral taking of respondents' planning periods.

support its contention. Instead, we reiterate the clear language from the SCAWV in *Gant*, "the plain meaning of [West Virginia Code § 18A-4-14 (2017)] is inescapable. Each teacher must be provided with at least one planning period of the length of the usual class period in the school, but no shorter than [forty][7] minutes." *Gant*, 180 W. Va. at 483, 377 S.E.2d at 475. Moreover, "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. Pt. 1, *UMWA v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984). Applying those principles here, we agree with the Board's rationale and affirm its determination on this issue.

Accordingly, we affirm the Board's Decision.

Affirmed.

**ISSUED:** December 23, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[7] Under the applicable version of West Virginia Code § 18A-4-14, the duration of the planning period has been extended to forty minutes.

9