No. 30,773.

BETTY CHAFFIN GRIMISON, *Appellant*, v. THE BOARD OF EDUCATION OF THE CITY OF CLAY CENTER, *Appellee*.

(16 P. 2d 492.)

Opinion filed December 10, 1932.

*C. Vincent Jones,* of Clay Center, for the appellant.
*W. T. Roche* and *W. M. Beall,* both of Clay Center, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a school teacher against a board of education for breach of contract of employment to teach school. A demurrer to the petition was sustained, and plaintiff appeals.

In May, 1931, the board of education of the city of Clay Center employed Betty Chaffin, a single woman, to teach in the city schools

for nine months, beginning with the opening of school in September, 1931. The contract of employment was in writing and contained the following stipulation:

"A further stipulation is that the marriage of a lady teacher during the term for which her contract is made automatically abrogates said contract."

In June, 1931, Betty Chaffin married J. G. Grimison. When school opened in September the board of education refused to recognize Mrs. Grimison as an employed teacher.

Plaintiff contends her contract was not automatically abrogated since she married before school commenced and not within the term for which she was employed. The contract related to status of a woman teacher during the term for which she was employed, and plaintiff's engagement was that if she changed her status, so that she would not be single during the term of employment, the contract was abrogated when the change occurred.

Plaintiff contends that if the contract be interpreted as just indicated, the provision relating to marriage is void and should be disregarded. This would leave a valid contract of employment which the school district refused to perform.

Plaintiff contends the contract was void as against public policy because in restraint of marriage, and her counsel quoted Lord Mansfield as declaring matrimony, " 'one of the first commands given by God to mankind after the creation, repeated again after the deluge, and ever since echoed by the voice of nature to all mankind.' "

The contract contained no covenant on plaintiff's part that she would not marry, and in point of fact the contract did not restrain her. So far as the contract was concerned, she was free to marry or to remain single; but if she exercised her free choice and married, the condition of the contract that it should thereupon terminate became operative.

Plaintiff contends the contract is discriminatory against women, and counsel for plaintiff praises married women as teachers. Statistics are not available, and it may be conceded the praise is deserved. But the law leaves it to the board of education, and not to the courts, to determine who shall be employed. The board of education was charged with sole control over the schools of the city (R. S. 72-1809). No man and no woman has a right protected by law to be employed as a teacher by the board of education of the city of Clay Center. No constitutional, statutory or common-law

right of any woman would be infringed if the board refused, for any reason, to employ female teachers. Tender of employment to a woman may be on such terms as the board may deem to be for the best interest of the school, and acceptance of terms by an applicant for employment constitutes waiver of privilege to object to them.

Plaintiff contends it cannot be successfully maintained that the mere fact of marriage disqualifies a man or woman to perform duties as a teacher. There are no instances of just the "mere fact of marriage." The change of status is followed by consequences, and the brief of counsel for plaintiff contains a reference to a consequence which sometimes occurs:

"It is most beneficial to a state to have a multitude of subjects; and therefore restraints on marriage are objectionable as being against public policy."

There was good reason for the command to Adam and Noah and Jacob to be fruitful and multiply. Whether the command has been sufficiently obeyed for present world needs is not a judicial question. However, reproduction is indispensable to continued existence of the human race, and if, following marriage of a female under contract to teach, the reproductive function should become operative, and should progress toward or progress to fruition within the period of employment, successful performance of the contract on the teacher's part might be interfered with or prevented. Therefore, for the good of the schools, a board of education may by contract leave it to the teacher to decide whether she will continue to teach or marry.

Plaintiff cites some constitutional provisions designed to secure equality of right of males and females. None of the cited provisions relates to discrimination between males and females as applicants for employment as teachers by boards of education. Male and female teachers have equality of right to enter into contracts to teach school. Part of plaintiff's equality of right in this respect consisted in privilege to contract with reference to employment on terms and conditions satisfactory to her. In this instance plaintiff contracted that if she should marry, employment ceased.

We do not have here a case of discharge of a teacher for some reason, good, bad, or indifferent. The case is one in which a person presented herself as a teacher, who had no contract of employment with the board of education, and the board was not bound to recognize her as a teacher. Likewise, we have no case of arbitrary or

capricious exercise of power by the board of education. Plaintiff and the board of education agreed on terms of employment. Plaintiff exercised her privilege to marry and thereby terminated her employment.

The judgment of the district court is affirmed.