No. 31,272

MARGARETHE PREBELIC KORESIC, *Appellant,* v. GRAND CARNIOLIAN SLOVENIAN CATHOLIC UNION OF UNITED STATES OF AMERICA, *Appellee.*

(25 P. 2d 355.)

Opinion filed October 7, 1933.

*James M. Meek,* of Kansas City, for the appellant.

*H. S. Roberts,* of Kansas City, and *Frank J. Jones,* of Joliet, Ill., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages which plaintiff asserted she sustained when she was excluded from membership in the defendant company, an incorporated fraternal insurance society. Judgment was entered for defendant on the pleadings and opening statement of counsel for plaintiff. Plaintiff appeals.

Allegations of the petition at present material were that plaintiff was for many years a member in good standing of St. Veronica Society No. 115 of the defendant union, and the holder of a certificate issued to her by defendant, granting privileges of membership in the union, including participation at her death in the mortuary fund, to the amount of $1,000. A copy of the certificate was attached to the petition. The name of the beneficiary was Margarethe Prebelic, which was plaintiff's name when the certificate was issued. One provision of the certificate was that while plaintiff was a member she would strictly comply with all the laws, rules and requirements relating to defendant, the Grand Carniolian Slovenian Catholic Union of the United States of America. On the certificate was indorsed a written acceptance signed by plaintiff, which reads:

"I hereby accept this certificate on the conditions named above, and agree

that my rights and the rights of my beneficiaries shall be governed and controlled by the laws, rules and regulations of the Grand Carniolian Slovenian Catholic Union of the United States of America now in force, or which may be hereafter adopted."

The petition alleged that a section of the constitution and by-laws of the union provided as follows:

"Whoever shall enter into a civil contract of marriage, he shall thereby *ipso facto* expel himself or herself from this union."

On August 27, 1927, plaintiff entered into a civil contract of marriage with Carl Koresic, in accordance with the laws of Kansas. Plaintiff was tried by the trial board of St. Veronica Society No. 115, was found guilty of violating the quoted provision of the constitution and by-laws, and an order expelling her from the union was entered. On appeal to the supreme judicial tribunal of the union, the conviction and expulsion were sustained.

The petition alleged the quoted provision of the constitution and by-laws was void, and by plaintiff's wrongful expulsion she lost privilege to continue to enjoy the protection afforded by the certificate, lost privilege to enjoy the society of members of the union, and suffered humiliation and mental distress.

Material portions of the answer were that under the constitution and by-laws of the union only a person who professes and is of the Catholic faith is eligible to membership; a person who does not belong to a Catholic parish or church is ineligible for membership; and one who ceases to be in good standing is not eligible to remain a member of the union. The answer further alleged that divorce is contrary to the ecclesiastical law of the Catholic church, and that any one desiring to marry must be married by a Catholic priest. In this instance, when plaintiff became a member of the union she was married to Bartol Prebelic. Afterward she obtained a divorce from Prebelic. While her divorced husband was still living she married Koresic. All this was in violation of the law of the church, and the plaintiff ceased to be and to remain a Catholic in good standing.

The reply denied all material allegations of the answer inconsistent with the petition. The allegations of the answer which have been summarized were not inconsistent with the petition, and consequently were not denied. The reply alleged plaintiff was tried, convicted, and expelled for entering into a civil contract of marriage, and nothing else, and alleged the facts stated in the answer constituted no defense to the action.

The opening statement of counsel for plaintiff merely outlined the case made by the petition, and in effect judgment was entered for defendant on the pleadings.

The answer was important in two respects: First, even although the order expelling plaintiff from the union was based on a specific act which disqualified her from membership, the damages would be small if she could not in any event remain a member because of divorce, and because of remarriage while her first husband was alive. Second, validity or invalidity of the by-law and of the order of expulsion pursuant to it depended on the true meaning and the reasonableness of the by-law, under all the circumstances. The petition carefully excluded all interpretative data. The answer supplied facts which the court would inevitably require to be developed before pronouncing upon validity or invalidity. The court knew what every reasonably well-informed person knows, that the Roman Catholic church regards marriage as a sacrament. (Webster's New International dictionary, title, sacrament.)

Plaintiff contends the by-law is void in that it is in restraint of marriage. In effect the argument is that the words of the by-law must be accepted as written, and must be accorded their usual and ordinary meaning, without enlargement of signification. The words refer to the civil contract itself, and not to any ceremony of solemnization. The words are that whoever enters into a civil contract of marriage thereby expels herself from the union. The statute of Kansas declares that marriage is a civil contract, and the by-law puts a penalty on lawful marriage.

The proposed method of interpreting the by-law cannot be accepted. Of course, words are to be accorded their usual and ordinary meaning, and of course nothing can be read into the by-law. But the court could not be restricted to a Peter Bell attitude with respect to the by-law. The words might be and in fact were charged with potency which the court could not estimate without knowing who was using them and for what purpose of the users they were employed.

The by-law does not say that one who marries forfeits membership, and is not directed against marriage. It specifies conduct which constitutes a disqualification for continued membership in the union. Membership in the union is limited to adherents to the Roman Catholic faith who belong to some parish or church. Under the law of the church, marriage not only includes all the essentials

of a civil contract, but very much more. Marriage is a sacrament, and can have no validity except through consecration by religious ceremony. Marriage thus raised to the dignity of a sacrament is indissoluble, except by death, or by the church which alone had power to create the matrimonial union. Any other kind of union, as by civil contract, is carnal. One who, by conduct, flouts this cardinal doctrine of the church becomes undesirable as a member of the union.

The result of the foregoing is, the words "civil contract of marriage" were used to distinguish marriage according to civil law from marriage according to church law, and the by-law means that one who marries without observance of the rite by which, according to Roman Catholic culture, divine grace is conferred, ceases to be a member of the union.

The necessity for considering the by-law in proper perspective may be shown in another way.

Plaintiff quotes Restatement, Contracts, § 581, which reads:

"A bargain not to marry, or to be subject to loss or deprived of profit in case of marriage, or a bargain to hinder or prevent the marriage of another, is illegal, unless the bargain is otherwise reasonable and the restraint is incidental to another lawful purpose of the bargain."

In this instance, the certificate of membership discloses no bargain not to marry, and discloses no bargain to be subject to loss or deprivation of profit in case of marriage. There was no attempt to prevent marriage, either by promise or by provision for a condition. (Restatement, Contracts, § 581, Comment a.) The illustrations following the comment show many instances of approved legal restraints on marriage. (See, also, *Grimison v. Board of Education,* 136 Kan. 511, 16 P. 2d 492; *Smith v. Nyburg,* 136 Kan. 572, 16 P. 2d 493.) The latter part of the section opens the subject of reasonableness of the membership bargain, and relation of the restraint to lawful purpose. As the Restatement indicates in respect to restraint of trade, a rule of reason, even if somewhat vague, must be employed in determining legality or illegality of restraint of marriage. (Restatement, Contracts, §§ 514, 515 and Comment a, § 516.) This may not be done without a full understanding of the entire situation.

In the light of what has been said, it is not necessary to discuss the reasonableness of the by-law, designed to keep the membership

of the union free from contamination, and plaintiff concedes that if the by-law be viewed as the court views it, it was valid and plaintiff's expulsion from the union was proper.

The judgment of the district court is affirmed.