Zimmerman, J.
 

 The determinative question presented is: Did the defendants as the board of education, under the facts narrated, possess the authority and have the power to terminate plaintiff’s continuing contract as a teacher?
 

 The problem now before us was alluded to in the opinion in the case of
 
 State, ex rel. Brown,
 
 v.
 
 Bd. of Edn. of City of Elyria,
 
 139 Ohio St., 427, 443, 40 N. E. (2d), 913, 921, in this way:
 

 “Relatrix Brown qualified as a teacher entitled to a continuing- contract under the first proviso of Section 7690:2, General Code. Her marriage was without significance, the law making no distinction between married and unmarried teachers. However, if a board of education has a rule against the employment or retention of married female teachers, and it should’decide to attempt to discharge the holder of a continuing contract because of marriage, the situation would then come within the provisions of Section 7690-6, General Code, and the question presented would then be whether marriage constitutes ‘other good and just cause’ for terminating the contract. That question is not now
 
 *248
 
 before the court, and no opinion is expressed thereon.”
 

 Boards of education have been invested by the General Assembly with extensive powers within their sphere of activity. Section 4750, General Code, effective until September 16, 1943, provided in part:
 

 “The board of education shall make such rules and regulations as it deems necessary for its government and the government of its employees and the pupils of the schools.”
 

 Section 4834-5, General Code, now in force, contains that identical language.
 

 Section 7690, General Code, effective until September 16, 1943, read as follows:
 

 “Each city, village or rural board of education shall have the management and control of all of the public schools * # * in the district * * *. It may elect, to serve under proper rules and regulations, a superintendent or principal of schools and other employees # * * and may fix their salaries.” See present Section 4836, General Code.
 

 Section 7690-6, General Code, was a part of the Teachers ’ Tenure Act enacted in 1941. That section, in force until September 16, 1943, and present Section 4842-12, General Code, are the same and commence:
 

 “The contract of a teacher may not be terminated [by a board of education] except for gross inefficiency or immorality; for wilful and persistent violations of reasonable regulations of the board of education; • or for other good and just cause.”
 

 Of course, where a statute specifies the precise grounds upon which a teacher’s contract may be, terminated, which grounds do not include marriage, a board of education is without authority to cancel the contract because of marriage.
 
 Goff
 
 v.
 
 Shenandoah Borough School Dist.,
 
 154 Pa. Sup., 239, 35 A. (2d), 900;
 
 Knox County
 
 v. State,
 
 ex rel.
 
 Nighbert, 177 Tenn 171, 147 S.W. (2d), 100.
 

 
 *249
 
 But where a statute, such as ours, not only specifies particular causes for which a board of education may terminate a contract but also contains the separate, phrase, “or for other good and just cause,” such phrase must be accorded meaning and force and certainly embraces and was intended to embrace other and different causes than the ones specifically enumerated.
 

 Under our statutes, a board of education is elected by vote of the people. As already indicated, it is charged with the management and control of the public schools and is authorized to employ and fix the salaries of those operating the schools. Moreover, it may “make such rules and regulations as it deems necessary for its government and the government of its employees. ” -
 

 It will thus be seen that the General Assembly has granted boards of education wide latitude and discretion in the particulars mentioned and if, as a matter of policy, a board adopts a rule that upon the marriage of a woman teacher her contract will terminate, can it properly be said that the deliberate violation of such rule does not constitute “good and just cause” for the cancellation of the contract?
 

 A rule of the kind described may have a sound basis in the particular school district and may bear a reasonable relationship to the responsibility of a board of education to build up and maintain an efficient and harmonious school system. Within the discretion conferred, a board may act on the theory that married women as a class will be absorbed with home duties and cares to the detriment of their school work, or on the theory that married women generally have husbands who can support them and that such women should give way to unmarried women qualified to teach and who must support themselves.
 

 
 *250
 
 The proposition is well settled that when an instrumentality of government is vested with discretion and such discretion is exercised in good faith and in a lawful manner, it should not be interfered with or controlled by the courts. Or, as stated by this court in the second paragraph of the syllabus of
 
 Brannon
 
 v.
 
 Bd. of Edn. of Tiro Consol. School Dist.,
 
 99 Ohio St., 369, 124 N. E., 235, “a court has no authority to control the discretion vested in a board of education by the statutes of this state, or to substitute its judgment for the judgment of such board, upon any question it is authorized by law to determine.”
 

 So, it has been held that the adoption by a board of education of a rule against the. employment or retention of married women teachers in the public schools is not arbitrary or unreasonable and lies within the field of discretion of the board to which has been entrusted the determination of questions of policy.
 
 Rinaldo
 
 v.
 
 School Committee of Revere,
 
 294 Mass., 167, 1 N. E. (2d), 37;
 
 Houghton
 
 v.
 
 School Committee of Somerville,
 
 306 Mass., 542, 28 N. E. (2d), 1001.
 

 And it was decided by the Supreme Court of Indiana in the leading case of
 
 McQuaid
 
 v.
 
 State, ex rel. Sigler,
 
 211 Ind., 595, 6 N. E. (2d), 547, 118 A. L. R., 1079, that where a school board had adopted a rule against the retention of married women teachers, the marriage of a permanent tenure teacher in violation of such rule and with knowledge of its existence, constituted “good and just cause,” under the statute, for the termination of her, contract. See 47 American Jurisprudence, 396, Section 139; Opinions of Attorney G-eneral (1941), 575.
 

 In the instant case, the board adopted the rule in 1937 that women teachers’ contracts would terminate upon marriage. Plaintiff was aware of it. In the contract entered into between plaintiff and the board on
 
 *251
 
 October 7, 1941, sbe agreed “to abide by and maintain tbe rules and regulations adopted by said board.” On February 14, 1942, she married in face of the rule. Under similar circumstances, the action of school authorities in canceling the teacher’s contract was upheld in the case of
 
 Hendryx
 
 v.
 
 School Dist. No. 4. Lane County,
 
 148 Ore., 83, 35 P. (2d), 235.
 

 Another pertinent authority is that of
 
 Nephew v. Dearborn Library Comm.,
 
 298 Mich., 187, 298 N. W., 376, 135 A. L. R., 1340, in which it was held that under an amendment to a city charter authorizing dismissal of employees in the classified civil service for any cause which might interfere with the efficient discharge of their duties, a library commission acted within its powers and did not abuse the discretion with which it was vested in discharging a woman employee who married with knowledge of the commission’s rule making marriage a ground for dismissal.
 

 It has been determined in a number of cases that contracts providing for the dismissal of teachers if they marry are valid and do not impose any unreasonable restraint upon marriage.
 
 Grimison
 
 v.
 
 Bd. of Edn. of City of Clay Center,
 
 136 Kan., 511, 16 P. (2d), 492;
 
 Gleason v. Mann,
 
 312 Mass., 420, 424, 45 N. E. (2d), 280, 283;
 
 Backie
 
 v.
 
 Cromwell Consol. School Dist. No.
 
 13, 186 Minn., 38, 242 N. W., 389;
 
 Price
 
 v.
 
 Rhondda Urban District Council
 
 (1923), 2 Ch. Div. (Eng.), 372; 35 American Jurisprudence, 352, Section 250.
 

 The view opposed to the one we have taken is set forth at length in the dissenting opinion in the
 
 McQuaid case, supra,
 
 and is to the effect that a board of education may cancel indefinite contracts of permanent teachers only for the causes specifically mentioned by the statute or, for “other good and just cause,” and that, applying the rule of
 
 ejusdem generis,
 
 “other good and just cause” means some dereliction akin to
 
 *252
 
 the causes enumerated, which actually affects the capacity of the teacher to function in an efficient and acceptable manner, hut does not contemplate marriage in and of itself.
 

 Counsel for plaintiff rely on the cases of
 
 School Dist. of Wildwood v. State Bd. of Edn.,
 
 116 N. J. Law, 572, 185 A., 664, and
 
 State, ex rel. Schmidtkunz
 
 v.
 
 Webb,
 
 230 Wis., 390, 284 N. W., 6. In the first, it does not appear that there was any rule of the board of education providing for the termination of the teacher’s contract upon marriage, dr that written charges were preferred against the teacher and a hearing had thereon as required by the statute. In the second, the statute under consideration was essentially different from ours in phraseology and punctuation.
 

 From a practical standpoint, if a board of education has a rule that the contract of a woman teacher shall terminate if she marries and such rule is against public sentiment in the school district, three things will happen — the rule will not be enforced, it will be revoked by the members of the board in office, or new members will be elected who will act in accordance with the wishes of the voters.
 

 In conclusion, it is important to remember that plaintiff’s marriage of itself did not bring about her dismissal; it was her marriage in contravention of the established rule of the board which it had the right to adopt and to which she had assented.
 

 The soundness of policy underlying the adoption and enforcement of a rule of the type in issue is not for the courts to decide. But if a board of education is denied the privilege of enforcing its valid rules, of what worth is the rule-making power and how can the prerogatives of government, management and control of the schools be effectively exercised?
 

 
 *253
 
 Finding no error in the judgments of the courts below, the judgment of the Court of Appeals is accordingly affirmed.
 

 Judgment affirmed.
 

 Turner, Matthias and Hart, JJ., concur.
 

 Weygandt, C. J., Bell and Williams, JJ., dissent.