LAUCHER ET AL., APPELLANTS, *v.* SIMPSON ET AL., APPELLEES.

(No. 597—Decided November 15, 1971.)

*Mr. George L. Breithaupt,* for appellants.
*Mr. Thomas D. Badger,* for appellees.

*Per Curiam.* Plaintiff, a 17-year-old junior, was barred from classes at Centerburg High School until he stopped wearing his hair at a length in violation of the dress code adopted by the board of education.

This code reads in pertinent part:

"(boys) Sideburns must be mid-ear, straight and groomed. Hair must not touch eyebrows or come down over ears or touch dress shirt collar in back."

Plaintiff filed an action in the Common Pleas Court requesting an injunction which would prevent his being barred from classes.

The trial court, after a full hearing, upheld the school board's dress code and refused to grant the injunction. Plaintiff has not attended classes since. This appeal on questions of law is the result of the above conflict.

Assignments of error Numbers 1, 2 and 3 are as follows:

"1. The judgment of the Court of Common Pleas of Knox County, Ohio, is against the manifest weight of the evidence adduced at the trial of this matter.

"2. That judgment of the Court of Common Pleas of Knox County, Ohio, is contrary to law.

"3. The trial court erred in excluding certain evidence offered by plaintiffs-appellants which evidence was ger-

mane to the issue before the court and said court erred in sustaining objections raised by counsel for defendants-appellees to certain questions propounded by counsel for plaintiffs-appellants which questions were proper and were germane to the issue before the court."

Alleged errors 1 and 2 are treated together.

School authorities have the power and authority to adopt dress codes. See Section 3, Article VI, Ohio Constitution, and R. C. 3313.20 and 3313.47. There is no Ohio Supreme Court case directly in point. As to a leading Ohio case, see *Holroyd* v. *Eibling* (1962), 116 Ohio App. 440 (the opinion was written by Judge Collier), where paragraph one of the syllabus reads:

"1. A court will not interfere with the authority of a local board of education to make rules and regulations concerning, nor substitute its judgment for that of the board in, the conduct of the affairs of a school, in the absence of fraud, abuse of discretion or arbitrariness or unreasonableness."

See, also, *State, ex rel. Humphrey,* v. *Adkens* (1969), 18 Ohio App. 2d 101 (opinion by Judge Crawford.)

We hold that the Board of Education in this case had the authority and power to adopt and enforce this dress code.

From defendant's Exhibit A in the evidence presented at the trial, we find that the preamble to the code in question reads as follows:

"1. Personal hygiene and *good grooming* are *components of good education.*

"2. Extremes in clothing and grooming are not acceptable in a learning situation.

"3. Student dress should promote and not detract from a learning atmosphere." (Emphasis added.)

This preamble shows substantial justification for the dress code and that it is reasonably connected with the educational process of the school.

We find also that plaintiff Laucher was knowingly in violation of the code when he was expelled. This is substantiated by his testimony as follows:

"Q. You knew you were in violation of the hair code didn't you?

"A. Yes."

We find also that the requirements imposed by the school authorities that he get his hair cut before he would be allowed to return to school was not unreasonable, arbitrary or capricious.

On the stand plaintiff Laucher stated:

"A. They told me to get my hair cut. I told them— I had a lawyer and I did not see how they could tell me to get my hair cut."

The record shows that Laucher was not alone in this violation. Five other boys failed to obey the rules and when told they should get a hair cut they complied and were admitted to classes.

The record also shows that the adoption of the dress code was in compliance with procedural due process. This dress code was adopted at a regular meeting of the Centerburg Board of Education and due and ample notice of its adoption was given to the students and to their parents.

There is no legal requirement that a board consult or have the approval of students and parents before the adoption of a dress code. Such matters are left entirely within the discretion of the school authorities. Evidence of the actions of students and/or parents showing their opposition to the dress code after its adoption would be entirely irrelevant. Therefore, the third assignment of error is overruled.

The plaintiffs here make a direct challenge to what they chose to describe as "discipline for the sake of discipline" imposed by an Ohio local board of education by way of rules regulating the hair length of male students. To sharpen his challenge, Laucher admits that he had at least one week's actual knowledge of the existence of the regulation prior to the start of school, and that when he was sent home at the opening of school he had his hair cut a certain amount and returned to inform the school authorities that he had a lawyer and didn't see how they could tell him to get his hair cut,

He admits his hair length violated the rule and makes no free speech claim in connection therewith.

At the heart of his position is the philosophy that discipline is no part of the educational process and, upon this foundation, he builds his argument that the Board of Education is powerless to interfere with his liberty in this respect.

Discipline is indeed a part of the educational process and we so hold.

Our system of public education, established to equip citizens with the skills they need to stay free under a rule of law must, if it is to succeed, thoroughly inform its students that the liberty and rights of all depend upon the willingness of the individual to discipline himself to respect the rights of others and that he learn to subordinate his individual desires when they conflict with the legitimate interests of others. Disciplined respect for the rights of others is essential to the survival of liberty.

Before judicial interference with the performance by a Board of Education of its obligation to teach discipline and maintain order in tax supported public schools can be allowed, it must affirmatively appear by clear and convincing evidence that the rule sought to be enjoined has no reasonable connection with any area of responsibility of the Board of Education.

A board of education has the duty to keep a boy's hair out of his eyes so that he may see, and to prevent his attentions to his hair from distracting fellow students. Any rule which reasonably tends to produce those results must necessarily prevail over considerations of a child's personal taste.

The answer to the parent's complaint that his relationship with his child is unlawfully invaded is that the school authorities stand in the place of the parent (in loco parentis) during the school hours. See *Leonard* v. *School Committee* (1965), 349 Mass. 704, 212 N. E. 2d 468, 14 A. L. R. 3d 1192 at page 1199. See, also, *Ferrell* v. *Dallas Independent School District* (C. C. A. 5, 1968), 392 F. 2d 697 at page 704.

Having decided that the regulation is valid upon its

face, we examine the contention that it is unconstitutionally applied to this particular boy upon the facts of this particular case.

In that connection, the evidence is clear that he elected to stay out of school publicly to manifest his challenge to the Board's authority rather than to cut his hair ½ inch shorter. The only legal interest asserted by him as justification for this is that he preferred to wear his hair that way. The interest of a 17-year-old public school student in personal taste does not outweigh the interest of the general public in the good order and discipline of its tax supported public schools.

It is argued by plaintiffs that the rule is unwise. This is no business of the courts. We do not judge the wisdom of rules. The power to determine whether a rule is wise or unwise is outside the jurisdiction of courts and rests, in broad latitude, within boards of education. This is a question of a separation of powers and is well settled. Once a party begins to argue to a court the question of the wisdom of the specific choice in a case where a board of education has been given the power to choose, he has stepped over the white chalk line and is out of bounds. These questions are to be decided separately by each local school district for itself acting through the duly elected members of their respective boards of education.

We recognize that the rights of a school child are as important to him and society as those of an adult. Indeed, what we hold is that these rights may be curtailed only to give effect to the more important rights of the tax paying public in the maintenance of discipline and good order in their public schools and then, under the 14th Amendment to the United States Constitution, only after due process of law has been afforded..

Here, great care was taken to afford this student procedural due process. The student had actual knowledge of the rule, by his own admission, one week prior to the start of school. During the week prior to the suspension, school authorities consulted with the student on three separate occasions; consulted once with his mother; and separately discussed the matter with his father. Full and complete

notice was given as required by statute. See *Ferrell, supra,* at 703.

Further, the trial court conducted full and extensive hearings, during which a number of witnesses appeared, evidence was introduced, and the student admitted he was in violation of the rule. The parties were afforded ample opportunity to present their evidence and the relevant facts were fully developed. The parties presented the controlling authorities to the trial court. Thereafter, the court rendered a full written opinion in which there were specific findings of fact stated separately from the conclusions of law. We are unable to find any abuse of discretion. Nor do we find any clear and convincing evidence to show that irreparable injury will occur to this plaintiff if an injunction is not issued. Plaintiff Laucher was not permanently expelled from school as a penalty for misconduct. He was not permanently expelled at all. He was clearly told he could return whenever he chose to comply with the same rule which, the record shows, was being equally applied to all other male students.

He could have cut his hair length ½ inch and returned to school at any time, and still have maintained his remedies at law in the courts. This would have caused him no permanent or irreparable damage.

On the facts of this particular record, we do not believe we have a situation of "mere discipline for the sake of discipline," on the part of the School Board but rather one of "public defiance of authority for the sole purpose of public defiance of authority" on the part of the student.

It is the action of the student and his parents and not the conduct of the school board which is unreasonable. Judicial interference, on these facts, could substantially damage the ability of school authorities to maintain that discipline which is necessary to an effective educational atmosphere in which all students and the public have a vital concern.

Our conclusions are that the board of education and the school authorities acted within the scope of their authority in adopting a dress code; that such authority is granted by the Constitution of Ohio and R. C. 3313.20; that the pro-

visions of their regulations are not unreasonable or arbitrary; that these regulations were uniformly applied and in a reasonable manner; that the enforcement of these regulations will not deprive plaintiff of any substantial constitutional rights; that the enforcement of these rules will not result in any irreparable injury to the plaintiffs; that this court has no authority to interfere with the discretion that is vested in the school authorities in this particular school matter; and that each of the three assignments of error are overruled.

*Judgment affirmed.*

PUTMAN, P. J., VAN NOSTRAN and McLAUGHLIN, JJ., concur.

McLAUGHLIN, J., retired, assigned to active duty under authority of Section 6 (C), Article IV, Constitution.