MORGAN, Appellant,

v.

BOARD OF EDUCATION OF GIRARD CITY SCHOOL DISTRICT, Appellee.

[Cite as *Morgan v. Girard City School Dist. Bd. of Edn.* (1993), 90 Ohio App.3d 627.]

Court of Appeals of Ohio,
Trumbull County.

No. 93–T–4844.

Decided Sept. 30, 1993.

628

*Don L. Hanni, Kevin D. Mager* and *Jan R. Mostov,* for appellant.

*Christopher J. Newman* and *Richard N. Selby,* for appellee.

---

FORD, Presiding Judge.

Appellant, Jerome Morgan, a minor, by Sherry Morgan, his mother, brings this appeal from the judgment of the Trumbull County Court of Common Pleas in favor of appellee, Board of Education of Girard City School District ("board"). The trial court affirmed the board's decision to expel appellant from Girard High School.

On October 2, 1992, certain members of the Girard High School staff discovered that one of appellant's fellow students, James Stephens, had brought marijuana to school and given it to appellant, who then sold it to another student, Jodi Perez, for $5. This $5 was later recovered by the Assistant Principal, Ronald Ragozine, during the ensuing investigation.

There was some conflicting testimony as to whether Stephens actually instructed appellant to sell the marijuana to Perez, or merely gave it to appellant upon request. There was also some indication, based on the results of a polygraph examination, that appellant did not know the package contained marijuana. However, Perez testified that she and appellant had discussed this transaction earlier in the library, at which time appellant told her he would provide the marijuana for her later in the afternoon. Hence, there was substantial, reliable evidence that appellant knowingly distributed the marijuana for profit.

Pursuant to the procedures outlined by the school's Discipline Policy and Student Assistance Program ("SAP"),[1] which are mandated pursuant to R.C. 3313.661, the Superintendent of Schools, Anthony D'Ambrosio, expelled appellant for eighty days.

Under the Discipline Policy, selling or distributing drugs carries a ten-day suspension with a recommendation to the superintendent for expulsion on the first offense. Item No. 5 of the SAP, which is incorporated by reference into the Discipline Policy, also prohibits the selling or distributing of drugs for profit, and calls for a ten-day suspension followed by a mandatory eighty-day expulsion.

Stephens and Perez were each suspended for three days pursuant to Item No. 6 of the SAP, which prohibits the possession or use of drugs on school grounds. The superintendent based appellant's harsher punishment on the fact that appellant had engaged in the sale or distribution of marijuana for profit, as opposed to possession, use, or giving away the drug, which does not mandate expulsion.[2]

Appellant timely appealed his expulsion to the board, which conducted an administrative hearing, and upheld the expulsion on December 15, 1992. Appellant appealed to the common pleas court on January 13, 1993, and contemporaneously filed a motion for a temporary restraining order and a request for a preliminary injunction with a memorandum in support attached. On January 22, 1993, the board filed a brief in response to appellant's request for an injunction. On that same day, the trial court held an in-chambers hearing, and subsequently granted the temporary restraining order, which stayed the execution of the administrative expulsion.

On January 28, 1993, the trial court entered final judgment affirming the board's order of expulsion and dissolving the stay. Appellant timely appealed to this court on January 28, 1993.

On February 1, 1993, appellant filed a motion for stay of judgment pending appeal, and on February 4, 1993, this court granted the motion. On February 5, 1993, the board filed a motion for reconsideration and brief in opposition to appellant's motion for stay. On February 17, 1993, appellant responded to the

---

1. This anti-drug program was instituted in January 1989, and revised in both June 1990 and February 1992. It was enacted as a means of eradicating the use of controlled substances which, in the board's view, has become a pervasive societal problem.

2. Item No. 1 of the SAP also pertains to those caught possessing or using, and provides for a hearing after three days, at which time seven of those ten days may be dropped in exchange for compliance with the "CORE" team's recommendation, which is made in accordance with SAP procedures in an effort to rehabilitate offenders. No such policy of potential leniency is provided with respect to punishment for the sale or distribution for profit of drugs.

board's motion for reconsideration. On March 11, 1993, this court overruled the board's motion.

Appellant advances the following assignments of error:

"1. The trial court erred and abused its discretion in affirming appellee's decisions to expel appellant because said decisions were contrary to law, arbitrary and capricious, and not supported by the preponderance of substantial, reliable and probative evidence on the whole record.

"2. The trial court erred in affirming appellee's decisions to expel appellant because said decisions were unconstitutional and illegal, and violated the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution and Sections 2 and 16, Article I, of the Ohio Constitution."

█ In his first assignment of error, appellant maintains that the record is devoid of evidence that either the Discipline Policy or SAP complies with the requirements of R.C. 3313.661. R.C. 3313.661 provides:

"(A) Each board of education shall adopt a policy regarding suspension, expulsion, removal, and permanent exclusion that specifies the types of misconduct for which a pupil may be suspended, expelled, or removed. * * * A copy of the policy shall be posted in a central location in the school and made available to pupils upon request. * * *"

As stated, the Discipline Policy calls for a ten-day suspension with a *recommendation* for expulsion. However, appellant was expelled for eighty days pursuant to Item No. 5 of the SAP, which mandates a ten-day out-of-school suspension followed by an *automatic* eighty-day expulsion. Appellant maintains, therefore, that the two policies are inconsistent, and thus not in compliance with Ohio law.

Appellant submits, however, that since the Discipline Policy purports on its face to be in compliance with R.C. 3313.661, for the sake of this appeal, the "code" referred to in R.C. 3313.661 refers solely to the Discipline Policy, *not* the SAP, and that the board must, therefore, demonstrate that appellant's expulsion was in compliance with the Discipline Policy. Thus, assuming *arguendo* that the Discipline Policy is the "code" under which appellant was expelled, appellant claims that since expulsion was only a recommendation and not mandatory under the Discipline Policy, the board's decision to expel him was unreasonable, arbitrary, and capricious, and deprived him of his right to a public education and to due process.

The crux of appellant's first assignment is that the board has presented no evidence that the SAP is part of the disciplinary code contemplated by R.C. 3313.661, and that it therefore could not be considered in determining the

appropriate penalty. However, we note that appellant is raising this argument for the first time in the course of this action. Appellant has not directed us to any place in either the administrative or trial record where he previously raised the issue. Nowhere does appellant argue that the basis for his claim that the expulsion was done in an arbitrary, capricious manner is that the SAP is violative of R.C. 3313.661.

In his reply brief before this court, appellant argues that he did not have the opportunity to raise the issue because the trial court did not ask for written memoranda, did not hold a hearing on the merits, and decided to rule solely on its review of the administrative proceedings.

■ However, it is axiomatic in Ohio that errors which are not brought to the attention of the administrative agency by objection or otherwise are waived and may not be raised on appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630. Further, had appellant desired to fully litigate this issue before the trial court, he might have had a basis to request that the court take in additional evidence pursuant to R.C. 2506.03.

We also observe that there is nothing in R.C. 3313.661 that purports to require that a disciplinary code adopted in compliance with R.C. 3313.661 identify itself as such on its face. Further, had appellant challenged the SAP during the proceedings below, the board would have had the opportunity to present evidence that the SAP was adopted in compliance with R.C. 3313.661. However, appellant cannot now rely on a lack of evidence challenging this policy when it was his own omission that prevented such evidence from being presented.

Consequently, in light of the foregoing, appellant's argument is waived, and his first assignment of error is overruled.

■ In his second assignment, appellant contends that his rights to due process and equal protection were violated because under the SAP and Discipline Policy, the board was required to treat appellant more harshly than it did Stephens or Perez. Thus, appellant claims that he was "singled out" for more severe punishment while he was no more culpable than the other two.

We again observe that appellant did not raise this issue at either the administrative or trial court level. Accordingly, any error is waived for purposes of appeal.

Notwithstanding appellant's omissions, "[a]s a general rule, courts will not attempt to interfere with rules established by a board of education, to revise them, or to intervene to prevent their being put into appropriate operation, unless such rules are unreasonable or give rise to a clear abuse of discretion or a violation of law. *Royer v. Bd. of Edn.* (1977), 51 Ohio App.2d 17, 19 [5 O.O.3d

138, 139, 365 N.E.2d 889, 891]; *Holroyd v. Eibling* (1962), 116 Ohio App. 440 [22 O.O.2d 264, 188 N.E.2d 797]. The Ohio Supreme Court has repeatedly held that a court has no authority to control the discretion vested in a board of education by statute, or to substitute its judgment for the judgment of such board on any question it is authorized to determine. *Brannon v. Bd. of Edn.* (1919), 99 Ohio St. 369 [124 N.E. 235], paragraphs two and three of the syllabus; *Greco v. Roper* (1945), 145 Ohio St. 243 [30 O.O. 473, 61 N.E.2d 307], paragraph one of the syllabus; *State, ex rel. Ohio High School Athletic Assn. v. Judges of the Court of Common Pleas* (1962), 173 Ohio St. 239 [19 O.O.2d 52, 181 N.E.2d 261], paragraph two of the syllabus. *The courts are so disinclined to interfere with regulations adopted by boards of education that they will usually not consider whether the regulations are wise or expedient but only whether they are a reasonable exercise of the power and discretion of the board. Greco v. Roper, supra; Laucher v. Simpson* (1971), 28 Ohio App.2d 195, 199 [57 O.O.2d 303, 306, 276 N.E.2d 261, 263]." (Emphasis added.) *Cross v. Princeton City School Dist. Bd. of Edn.* (1989), 49 Ohio Misc.2d 1, 2, 550 N.E.2d 219, 220.

The order of expulsion in the instant case does not constitute an arbitrary, capricious, or unreasonable action because it was based on appellant's violation of the school's stated policy. Appellant's harsher punishment was a result of the board's determination that selling drugs is a more severe penalty than giving away, possessing, or using drugs. Since we cannot interfere with the board's reasonable exercise of judgment as to which activities should be punished and to what degree, we cannot say that appellant's right to due process has been violated simply because the board adhered to its own regulations.

Similarly, appellant contends that the disparate treatment given him and the other two students should be examined in the context of equal protection. Since appellant has not demonstrated that either a suspect class or fundamental right is involved, we will subject the case to the lowest level of scrutiny, the rational basis test. This test provides that governmental action may classify people in a manner that is rationally related to legitimate governmental objectives. *Schweiker v. Wilson* (1981), 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186.

We have already determined that the board's decision to punish the sale of drugs more harshly than it does the possession or use of them is reasonable and should not be interfered with. Therefore, the board had a rational basis upon which to rely in formulating its anti-drug policy. Based on the foregoing, we conclude that appellant's assignments have no merit, and that the trial court did not err in upholding appellant's expulsion. Accordingly, we affirm.

*Judgment affirmed.*

CHRISTLEY and NADER, JJ., concur.