OPINION
The following is an administrative appeal by appellant, Levey Company ("Levey"), from the Lake County Court of Common Pleas decision affirming a decision of the Board of Zoning Appeals of the City of Willoughby ("the Board"). The Board previously affirmed the City of Willoughby's ("the City") decision to deny a building permit to Levey. Levey wishes to build a Wendy's restaurant with a drive-through window on the property in question. This controversy swirls around the permissibility of the drive-through window. On cross-appeal, the Board assigns as error a ruling by the court to exclude a city ordinance from consideration in resolving the case.
The property involved is a 2.62 acre parcel in Willoughby which Levey is developing. In October of 1996, Levey submitted an application and site plan to the City's Planning Commission (the "CPC") for the proposed development. The plan consisted of three buildings, a Walgreen's drug store (with a drive-through service window), an office building, and a drive-through restaurant. The CPC met on October 24, 1996, and the issue was raised of whether or not the zoning ordinance for the local business district allowed drive through facilities in the district. An opinion was sought from the City's law department. On November 12, 1996, the law department advised the CPC in writing that a drive-through was a permitted use. On November 14, 1996, the CPC approved the site plan. On December 3, 1996, the City's Environmental Planning Commission approved the site plan. Also on December 3rd, City Council passed resolution #1996-21, which authorized the start of construction on the project subject to compliance with applicable ordinances and statutes. At the time, according to the City, the ordinances and statutes in effect permitted the construction of restaurants with drive-through facilities.
After the CPC approved the plan, an adjacent property owner, Robert Campbell (and others), appealed the decision directly to the court of common pleas. They had attended the CPC meeting(s) to voice opposition to the site plan. Specifically, they were opposed to the building of a drive-through restaurant at that location. The CPC filed a motion to dismiss. The court denied the motion, holding Campbell had standing in the court of common pleas under R.C. 2506, et seq., because Campbell participated in the CPC meeting, voiced objections, indicated he intended to appeal an unfavorable ruling, and was able to demonstrate he would be directly affected by the construction of a drive-through. Campbell's contention was that drive-through restaurants were not a permitted use under the current applicable zoning ordinance.
As a result of the lawsuit, on Dec. 18, 1996, the mayor of Willoughby issued a directive to the City's Chief Building and Zoning Inspector not to issue a building permit for a drive-through restaurant prior to the resolution of the lawsuit against the city. While the Campbell case was ongoing and the CPC was defending its approval of the site plan, on Feb. 18, 1997, the city council amended the applicable ordinance (Ordinance No. 1143.06) by enacting Ordinance No. 1997-33. The amended ordinance prohibited building drive-through facilities in the local business district, banking facilities being the only exception.
On March 12, 1997, the CPC filed its brief in the court of common pleas in defense of the Campbell suit. Within their brief, the City argued that construction of restaurants (which do not serve alcoholic beverages) in the local business district was a use permitted by right, and that there was nothing within the ordinances, nor any prior legislative intent, to prohibit such restaurants from having drive-through facilities. They based this argument on an amendment process that began in April of 1995, and ended in October of 1996. An amended Ordinance No. 1143.06 was adopted on October 17, 1996. According to the City's brief, since this ordinance did not proscribe drive-through restaurants, there could be no justification for prohibiting them. They argued that zoning restrictions must be construed against the authority attempting to impose them, and that restrictions cannot be extended to include limitations not clearly proscribed. Therefore, the CPC argued, the drive-through was a permitted use. The City did not mention within their brief the February 17, 1997, amendment of Ordinance No. 1143.06 by Ordinance No. 1997-33.
In addition to the CPC defending the approved site plan in court, the City's Chief Building and Zoning Inspector sent a letter to Levey on March 25, 1997, stating that the proposed structures were permitted and in compliance with the City's zoning ordinances. Again, the letter did not mention the February amendment to Ordinance No. 1143.06 by Ordinance No. 1997-33. Levey then commenced construction in accordance with the site plan. Levey graded the landscape, installed the storm sewers, utility lines, the parking lot and lighting. The Walgreen's drug store, with a drive-through window, was constructed by September. In the meantime, Levey negotiated with potential tenants for the drive-through restaurant, ultimately striking a deal to build a Wendy's restaurant.
On September 2, 1997, the Lake County Court of Common Pleas affirmed the CPC's approval of the site plan. In what must be a reference to the October 17, 1996 amendment to Ordinance No. 1143.06 (the judgment entry does not mention the February amendment) the court noted that there is nothing in the zoning statutes prohibiting construction of drive-through restaurants. The court also noted that the CPC presented "sufficient concrete evidence" indicating City Council never intended to ban such facilities. Therefore, in the absence of a proscription, the court applied the rule that zoning laws are to be strictly construed in favor of the property owner, and held that drive-through facilities are permissible under Ordinance No. 1143.06. The court affirmed the site plan on the basis that there were no bars to construction of a drive-through restaurant. No distinction was drawn between this approval and the ultimate issuance of a building permit.
On September 12, 1997, Levey submitted his application for a building permit for the construction of a Wendy's restaurant. On September 16th, City Council passed another Ordinance, No. 1997-117, which was an "emergency measure" repealing Chapter 11 of the City's code in its entirety, and replacing it with an ordinance which banned the construction of drive-through restaurants in the local business district. The City's Chief Building and Zoning Inspector then responded to Levey's application by mail on October 15, 1997. He explained to Levey that the City Law Director advised him not to issue a permit because of the revised zoning ordinance adopted on September 16, 1997, which prohibited the building of drive-through restaurants at his location. Levey appealed the denial of the permit to the Board of Zoning Appeals. A hearing was held on November 12, 1997. Testimony was taken under oath. Without making any findings of fact or conclusions of law, at the conclusion of the hearing, the Board denied the appeal by voice vote. At no point during the hearing did the City argue that Ordinance No. 1997-33 (the February amendment banning drive-through restaurants) was the rationale for denying the permit. This ordinance was not mentioned at all during the hearing, nor was it submitted in evidence.
Levey subsequently appealed to the court of common pleas. The court issued its ruling on September 22, 1998, affirming the judgment of the Board. The court noted that the Board was raising for the first time on appeal the argument that Ordinance No. 1997-33, passed on February 17, 1997, expressly prohibited the construction of drive-through restaurants at that location. The court ruled that because this issue was not raised at any time during the November 12, 1997 hearing either by the City's representatives or by the Board itself, the argument was waived and could not be considered on appeal. The Board assigned this part of the decision as error on cross-appeal.
The court ultimately ruled against Levey, finding that he did not have a vested right to build a drive-through restaurant. The court found that Levey had not yet made substantial nonconforming use of the property and therefore denial of the application did not disrupt or obliterate a substantive right. This being the Ccase, the court held the new zoning code could be given retroactive effect, and consequently affirmed the Board's decision. The court also held the Board's decision was supported by a preponderance of the evidence. Levey timely filed notice of appeal, assigning the following errors:
 "[1]. The lower court erred in holding that the City of Willoughby Hills acted lawfully in depriving Levey (defined below) of its vested right to the Building Permit in accordance with the approved site plan.
 "[2]. The lower court erred in holding the City of Willoughby Hills can retroactively enact rezoning legislation (changing the ability to have a drive-thru facility) for the sole purpose of thwarting Levey's attempted enforcement of its right (to use the property as approved and zoned) to which Levey was clearly entitled at the time of its valid and timely application.
 "[3]. The lower court erred in finding that the Willoughby Hills Board of Zoning Appeals' decision was not unconstitutional, illegal, arbitrary, capricious, unreasonable and totally unsupported by the preponderance of reliable and probative evidence.
 "[4]. The lower court erred by not adhering to its earlier decision in the case of Robert Campbell, et al., v. City of Willoughby Planning Commission, et al., Case No. 96 CV 001836, when it held that drive-thru facilities are permissible under the City of Willoughby's code in this district, at the time the Property's site plan was approved."
The Board cross-appeals, assigning the following error:
 "The Trial Court erred in its failure to consider Ordinance No. 1997-33 and its prohibition of a restaurant with a drive-through facility in the subject Local Business District."
We will address the Board's cross-assignment of error first. Levey submitted his application for a building permit on September 12, 1997. The court of common pleas' judgment is based on its determination that the ordinance passed by City Council on September 16, 1997, could be given retroactive effect and, therefore, applied to Levey's application.
The Board argues the court should have based its decision on the February 1997 ordinance that prohibited construction of restaurants with drive-through facilities in the local business district. If applied, this law would be applied prospectively, and thereby resolve the legal issues revolving around the timing of the filing of the application for the building permit. However, because this law was not presented by anyone as a basis for denying the permit at the board hearing on November 12, 1997, the court ruled the argument had been waived and could not be raised on appeal.
This court has held that when a party fails to bring an issue or error to the attention of an administrative agency, that party has waived the right to raise that issue or error on appeal at the court of common pleas. Recreational Facilities, Inc. v. HambdenTwp. Bd. of Trustees (June 30, 1995), Geauga App. No. 93-G-1819, unreported, at 9; Morgan v. Girard City School Dist. Bd. of Edn.
(1993), 90 Ohio App.3d 627, 631, citing Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41, 43. The court of common pleas cited these cases in support of its judgment on the issue of waiver. In response, the Board argues it was error for the court of common pleas to decline to take judicial notice of the ordinance. Also, the Board argues a court of appeals has the authority to take judicial notice of any fact the trial court might have, and asks this court to take judicial notice of the ordinance and apply it to the present case.
Civ.R. 44.1 governs judicial notice of certain laws. It requires a party who intends to rely on a municipal ordinance to "give notice in his pleading or other reasonable written notice." Civ.R. 44.1(A)(2). In the absence of that, the rule reposes with the court the discretion to take notice of an applicable municipal ordinance. Under the facts of this case, we cannot say the court of common pleas abused its discretion in holding the Board and the City waived the issue by failing to raise it in any form at the November 1997 board hearing. Nor did the court abuse its discretion in declining to take judicial notice of the ordinance.
The existence of the amended City ordinance raises a number of troubling questions. The City passed the ordinance in February of 1997. At that time, the City was litigating Robert Campbell,et al., v. City of Willoughby Planning Commission, et al., Case No. 96 CV 001836. The City submitted its brief in Campbell in March of 1997, after the ordinance was passed, yet neglected to mention its existence, and, in fact, took a contrary position. The City continued to maintain that drive-through windows were permissible at that location, although the ordinance would have disposed of the case in Campbell's favor. It can be inferred from the content of the court's judgment in the Campbell case, entered in September of 1997, that neither the court nor Campbell himself were aware of this ordinance prior to the court's decision, which was seven months after the ordinance was adopted. It is particularly odd that Campbell was not aware of it, since he was leading the community charge to stop the construction of the drive-through. Nor was the City's Chief Zoning Inspector apparently aware of the ordinance, although one would expect him to be so informed as the chief zoning inspector. His letter of March 25, 1997, indicated the site plan complied with the applicable zoning ordinances.
Another oddity is that two weeks after the Campbell ruling, four days after Levey's application was submitted, the City changed its zoning ordinance by emergency measure to ban the construction of drive-through restaurants. That would seem an unnecessary act if the City already had an ordinance which resolved its problem. No mention was made of the February ordinance in the October 15, 1997 letter from the Building Inspector denying the building permit. The City's law department advised the inspector to deny the permit on the basis of the September ordinance rather than the February ordinance, thereby inviting a legal battle over the retrospective application of the law. Finally, no one, including the Board itself, presented the ordinance for consideration at the November 12, 1997 hearing before the Board.
What is especially troublesome is that up until the denial of the building permit, the City continued to represent to Levey that his plans were in compliance with the applicable ordinances so far as the City was concerned. This caused the commitment of time, money, and resources involved in executing this particular site plan, which might have been substantially altered if something other than a drive-through restaurant was to be constructed.
Given the facts of this case, it would be entirely inequitable to use our discretion to take notice of the ordinance now. When the City approved the site plan and defended it in court, it was looking at the applicable ordinances with particular attention to the ultimate permissibility of the drive-through service window. By both affirmative acts and by omissions, up until the City passed Ordinance No. 1997-117 on September 16, 1997, it continued to represent the drive through was a permitted use. We conclude the court of common pleas appropriately applied the law regarding waiver of issues and did not abuse its discretion in declining to take judicial notice of the February ordinance. The Board's assignment of error on cross-appeal is without merit.
As they are interrelated, we will address Levey's first two assignments of error together. In his first assignment of error, Levey argues that Gibson v. City of Oberlin (1960), 171 Ohio St. 1, sets forth the rule of law which is dispositive of this case.Gibson states:
 "Where a property owner complies with all the legislative requirements for the procurement of a building permit and his proposed structure falls within the use classification of the area in which he proposes to build it, he has a right to such permit, and there is a duty on the part of the officer charged therewith to issue it." Id. at paragraph one of syllabus.
We agree. No one contends that Levey did not comply with all the requirements for the procurement of a building permit. His application was rejected on the grounds the proposed structure did not fall within the use classification of the area in which it was proposed to be built at the time the application was rejected. The key issue is what the zoning classification was atthe time Levey filed his application, and whether Levey's proposed use conformed to that classification.
The record establishes that at the time Levey submitted his application, the proposed use conformed to the zoning code. The issue of the permissibility of a drive-through restaurant was first raised at the CPC meeting on October 24, 1996, wherein the proposed site plan was discussed. The City's law department was consulted and subsequently advised the CPC that the drive-through was permitted under the applicable code. The CPC then approved the plan on November 14, 1996. The City Council authorized the commencement of construction on December 3, 1996. Robert Campbell then filed suit against the City to stop the construction of the drive-through restaurant. In its brief filed in response to Campbell's lawsuit on March 12, 1997, the City defended its approval of the site plan on the basis that the drive-through restaurant was permitted under the code. On March 25, 1997, the City's Chief Building and Zoning Inspector sent a letter indicating the proposed structure was permitted under the code. On September 2, 1997, the court of common pleas returned a judgment in favor of the City, establishing that the drive-through window was a permitted use under the applicable zoning code.
At that point in time, the City and Levey were on the same side of this issue, and the court of common pleas vindicated their position with its judgment. Nothing changed between the judgment entry of September 2, 1997, and September 12, 1997, when Levey submitted his application. It was not until four days later, when the city changed the zoning code by an emergency measure, that the proposed use became a non-conforming use. At the time Levey submitted the application, the proposed use conformed to the code.
After the court of common pleas determined that the February ordinance had no application, it addressed the issue of retroactive application of the ordinance adopted on September 16, 1997. The key issue was whether or not Levey's right to build the structure had vested prior to the passage of the new ordinance. The court of common pleas concluded that the holding of Smith v.Juillerat (1954), 161 Ohio St. 424, rather than Gibson, supra, supplied the controlling law. At Levey's hearing before the Board of Zoning Appeals, the Board also had used the Juillerat case law and analysis in reaching its conclusion.
The facts in Juillerat are as follows. The Lake Erie Coal 
Supply Company ("the Company") entered into lease agreements with several property owners for the purpose of conducting strip-mining operations. Strip-mining was a nonconforming use of the property. On October 21, 1949, the Company applied for the appropriate license to begin operations. This license was issued on November 2, 1949. During the period between the application and issuance of the license, several adjacent property owners filed a petition with the court of common pleas alleging that the proposed strip-mining operations would constitute a nuisance and that a township zoning law which made strip-mining unlawful was awaiting submission to the electorate in the upcoming election. Based on these allegations, the court granted the adjacent property owners a temporary restraining order.
On November 8, 1949, a majority of township voters adopted the proposed zoning ordinance outlawing strip-mining. This ordinance included the land in question and became effective November 13, 1949.
During the preliminary litigation, the Company had drilled a hole for testing purposes on a portion of the property, but no coal was removed before the ordinance became effective. At a hearing on November 9, 1949, the adjacent property owners filed a supplemental petition arguing that the passage of the zoning ordinance constituted another ground for granting a permanent injunction. The trial court granted the adjacent property owners a permanent injunction prohibiting the Company from conducting strip-mining operations on the property in question. This decision was upheld on appeal.
In affirming the trial court's ruling, the Supreme Court of Ohio held:
 "Where no substantial nonconforming use is made of property, even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property." Juillerat, at paragraph four of the syllabus.
In applying this law to the case sub judice, the court's analysis consequently focused on whether the record of the hearing demonstrated that Levey had made substantial nonconforming use of the property prior to the adoption of the ordinance, thereby vesting his rights. If that were the court's finding, the ordinance could not be given retroactive effect. The court found that Levey had not made substantial nonconforming use of the property sufficient enough for the right to build the drive-through to vest. Therefore, the court concluded the Board's decision to apply the ordinance retroactively, banning construction, was proper. However, the court applied the incorrect law as controlling (Juillerat).
Under the facts of this case, the court should have applied the law as set forth in Gibson. The facts of the Gibson case are directly analogous to the case sub judice. Gibson addressed a situation where a party had applied for a building permit to build an apartment house, which was permissible at the time of his application. The builder was denied the permit as the result of the court giving retroactive application to a new zoning ordinance that banned the construction of apartment houses at that location.Gibson specifically addresses the issue of when the right to a building permit becomes vested. The Gibson court stated:
 "[W]here, as in the instant case, a property owner has complied with all the legislative requirements for the procurement of a building permit and his proposed structure falls within the use classification of the area in which he proposes to build it, he has a right to such permit, and there is a duty on the part of the officer charged therewith to issue it. Subsequent legislation enacted pending applicant's attempted enforcement of such right through administrative or legal channels cannot deprive him of the right. The right became vested, under the law applicable thereto, upon the filing of the application for the permit.
 " * * * the law in effect at the time of the application for the permit controls the issuance thereof * * * ." (Emphasis added.) Gibson, at 5-6.
In Gibson, the court also stressed a point which is directly applicable to the case at bar, stating:
 "A municipal council may not, by the enactment of an emergency ordinance, give retroactive effect to a pending zoning ordinance thus depriving a property owner of his right to a building permit in accordance with a zoning ordinance in effect at the time of the application for such permit." Gibson, at 4, quoting State ex rel. Fairmount Center Co. v. Arnold (1941) 138 Ohio St. 259, paragraph one of syllabus.
Gibson clearly states that the right to a building permit vests upon filing of the application, assuming the proposed structure complies with the regulations in effect at the moment the application is filed. Therefore, the appropriate determination which the Board and the court of common pleas should have made was whether the application was in compliance with the zoning code that was in effect on the day of the application, September 12, 1997. We find that Levey's application was in compliance with the code on September 12, 1997, and consequently find Levey is entitled to the permit.
We note that in Gibson the Supreme Court of Ohio specifically considered the application of the Juillerat case law to the facts of the Gibson case and concluded that the holding did not apply, providing the following analysis:
 "The decision in that case is not applicable to the case at bar. In Juillerat the question was whether a nonconforming use existed. In that controversy, a defendant held a license which permitted it to engage in strip mining upon certain lands. A zoning resolution pending at the time such license was issued and enacted before such strip mining began had the effect of making such mining illegal. Although such defendant had spent money on preliminary work pertaining to the contemplated strip-mining operation, the courts determined that such defendant had not in fact perfected a nonconforming use and thus that it had no vested right prior to the effective date of the ordinance rendering strip mining illegal. Id. at 3.
 Juillerat is applicable only in situations where a landowner has been using certain property for a specific purpose, with or without a permit, and the governing body subsequently determines that the current use of the property is undesired and rezones the area to prohibit such use. When this occurs, the landowner is obviously no longer legally permitted to continue the prior use unless the landowner has perfected the nonconforming use, vesting the right to continue. If not, the landowner has the option of seeking a nonconforming use exception.
Gibson, on the other hand, directly and specifically addresses the issuance of building permits. Building permits require the approval of the appropriate authorities. The landowner receives this authority by applying for various necessary permits. If such application is submitted before a change in the zoning laws, the landowner is entitled to the permit as a matter of law. Hence, under Gibson, there is no requirement that the landowner establish a nonconforming use prior to seeking a permit, as is the case in Juillerat. In fact, if it were necessary to first establish a nonconforming use, the holding in Gibson would be a nullity because the court in Gibson assumed that the desired use was legal before submission of the application. Conversely, if the landowner submits the application after the relevant zoning ordinances have already been changed, the landowner is not entitled to the permit.
When Levey filed for the building permit to for a drive-through restaurant on September 12, 1997, he had a right to the permit and the City was bound to provide it. The City's Ordinance No. 1997-117 cannot be applied retroactively to the subject property. Levey's first two assignments of error have merit. As the third and fourth assignments of error are moot, we need not address them pursuant to App.R. 12(A)(1)(c).
The judgment of the court of common pleas is reversed and judgment is entered in favor of Levey.
 ____________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J., CHRISTLEY, J. concur.